The Pittsburgh, Cincinnati and St. Louis Railway Company

v.

Isabella Knutson, Admx.

| 69 | 103 |
| 101a | [1]127 |
| e101a | [1]128 |
| 69 | 103 |
| e210 | [1]216 |

1. EVIDENCE—*sufficiency to prove ownership or control of a railway train.* In a suit against a railway company to recover for an injury inflicted by a train of cars, alleged to have belonged to the company, or operated by it, full and undoubted proof of the fact that the company owned the train, or was operating the same, is not required of the plaintiff. In the absence of positive proof on the subject by the company, it will be sufficient if the plaintiff's evidence is *prima facie* sufficient to show the fact.

2. NEGLIGENCE—*resulting in death to a human being in a public street, by a railway train running at too great a speed.* In a suit against a railway company to recover damages for causing the death of the plaintiff's intestate through negligence, it appeared that the deceased was struck by the train while attempting to cross the track on a public street in a populous city; that there were a great many tracks at the place, and much

switching of trains, and that the deceased at the time was watching for another train a few feet ahead of him to pass, and while so waiting was struck by another train coming from behind, and which was running at the rate of ten miles an hour, in violation of the ordinances of the city. The jury found the defendant guilty: *Held*, that if the deceased was guilty of negligence it was not gross, but slight, as compared with that of the company; and that it was guilty of gross negligence in running its train at such a speed in a great public thoroughfare, and that the verdict was not unsustained by the evidence.

Appeal from the Circuit Court of Cook county; the Hon. Lambert Tree, Judge, presiding.

This was an action on the case, brought by Isabella Knutson, administratrix of the estate of Severt Knutson, deceased, against the appellant, under the statute, to recover damages for causing the death of the intestate through negligence. The leading and essential facts of the case are stated in the opinion of the court.

Mr. E. Walker, for the appellant.

Mr. John Lyle King, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It appears that on the 17th day of November, 1871, Severt Knutson, at the intersection of Kinzie and Desplaines streets, in the city of Chicago, was struck by a passing railroad train and was thereby injured, and from the effects of that injury he in a few days thereafter died. Appellee, the administratrix of his estate, brought this action, under the statute, to recover damages from the company, charging that the injuries were the result of negligence of the employees of the company. The case was tried by a jury, and a verdict was rendered for $1700 against the company, on which, after a motion for a new trial was overruled, judgment was rendered; and the company bring the case to this court on appeal.

It is first urged, that the train which did the injury was not shown by the evidence to have belonged to appellants. On this question several witnesses testify, and their evidence tended strongly to show that appellants owned, or at least were operating this train. It may not prove the fact beyond all doubt, but it certainly raises a strong presumption that they had the control of the train. In reference to such a fact we can not expect full and undoubted proof. The ownership can only be proved or disproved positively by some of the officers of the road. It is no doubt true that the larger portion of the employees of the company, and all persons not connected with it, can have no certain knowledge of the ownership, or what company is using. such property.

We infer from the evidence, that the road had changed its name several times, or at any rate had been known at different times by several names. The evidence was *prima facie* sufficient to prove this fact, that the company owned the property, and if untrue appellants had it in their power to disprove it; but have failed to do so, and can not complain that the jury have found that issue as they did. But when considered, we have no hesitation in saying that the evidence sustains the finding of the jury on that question.

It is next urged that the evidence does not sustain the verdict. It is claimed that deceased was guilty of that degree of negligence as to prevent a recovery. It is urged that he was standing upon the track; that the bell was ringing and that he could have seen the approach of the train for two or three blocks before it struck him. Deceased seems to have been familiar with the place of the accident. But in attempting to cross several tracks that are near and parallel to each other, his course was obstructed, and he compelled to stop, until a passing train, a few feet in front of him, had gone by, and he seems, from the evidence of those who witnessed the occurrence, to have been watching that train and waiting for it to pass when struck and injured. The train which struck him, the evidence shows, was running at the

speed of about ten miles an hour.  The place was on a street much traveled, and where, the proof shows, there was much switching of trains and some noise and confusion.

Under such circumstances we would not expect a party to be able to see and hear every thing occurring around him so well as if he had been crossing but a single track.  It is true that the place was such as to require of him more vigilance than if there had been but one track.  Had he been crossing but a single track, a glance at the road and its surroundings would have sufficed to inform him whether there was danger; whilst here, with its many tracks and passing engines and trains, even the most careful would be liable to omit some precaution.  And from the evidence we think that deceased might and perhaps should have been more vigilant, and may have been guilty of some negligence.

But on the question of comparative negligence, how stands the case?  Appellants were, through their employees, propelling a large, unwieldy and dangerous machine through the streets of a populous city.  The engine-driver and conductor knew, or should have known, that it would imperil the lives of the citizens to run the train there at the rate of ten miles an hour.  It was less under control than it would have been at a less rate of speed.  When operating such vast and dangerous forces in great thoroughfares, those having them in charge must be held to a high degree of care.  When thus used they must be required to so regulate their speed as to secure the safety of persons passing, and having an equal right to pass the streets as is enjoyed by the company to so run their trains.  It would appear to the minds of all prudent persons that such a rate of speed, at such a place, is reckless, and in total disregard of human life.  All must know that it is hazardous almost in the extreme.  If such conduct were not attended with disaster, it would be a matter of surprise.

Although these great organizations, so essential to our civilization, are indispensable, their convenience or interest, or that of the traveling and commercial world, are not para-

mount to the safety of individuals or communities. Government is instituted to protect communities, and personal security is primary. Any and all persons would say that it would be reckless for an individual to drive his horses through the thronged streets of a large and populous city at such a rate of speed; and yet he would have his horses under more prompt and immediate control than an engine and train can ever be brought. The individual could check his team on a shorter space, and could readily turn it in its course, and thus afford some means of avoiding injury to pedestrians.

It appears that the city ordinance prohibits, under a penalty, all trains running in the city at a greater rate of speed than six miles an hour. And the act of 1865, sec. 1, p. 103, provides, that any railroad running their trains at a greater rate of speed than is allowed by such ordinance, shall be liable to each individual sustaining damage done by such train or engine, to the full extent of such damage.

This section would seem to be conclusive of the question of liability, unless the negligence of the person injured was gross or willful. This section was designed to change the common law liability of railroad companies, and the language employed shows the solicitude of the law-makers for the protection of persons from such hazards as high speed of trains in such places must produce.

This purpose seems to be more manifest, when the first is compared with the second section of the act. The latter declares that if any stock shall be killed by trains running at the prohibited rate of speed, the same shall be presumed to have been done by the negligence of the company, or their agents. This only creates a presumption of negligence, whilst the first section renders the company absolutely liable for all injury done to persons, when running at the prohibited speed. We, therefore, have no hesitation in saying that the evidence sustains the finding. If the deceased was guilty of any negligence, it was slight in comparison with that of the company, as it strikes us as being gross. Again, the verdict

is sustained by the act of 1865, as there is no doubt that the train was running at a greater rate of speed than was permitted by the ordinance, and deceased did not act with gross or willful negligence. When the entire record is considered, we fail to perceive any error, and the judgment of the court must be affirmed.

*Judgment affirmed.*