City of Chicago v. The Ferris Wheel Company.

1. Ordinances—*License Fees—Confiscation of Property Invested.*— An ordinance requiring a license for a business, lawful in itself, which amounts to a confiscation of the property invested in such business or to a prohibition of the business, is void.

Interlocutory Order, granting an injunction. Appeal from the Superior Court of Cook County; the Hon. John Barton Payne, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed October 31, 1895.

Wm. G. Beale, Corporation Counsel, attorney for appellant; Wilson, Moore & McIlvaine and Rubens & Mott, of counsel.

Green, Robbins & Honore, attorneys for appellee; Wm. A. Vincent, of counsel.

Mr. Presiding Justice Gary delivered the opinion of the Court.

This is an appeal from another interlocutory order granting an injunction. The decision on the first one is reported in 58 Ill. App. 625.

When that decision was made, an ordinance was immediately adopted, the effect of which is to require a revolving wheel, carrying passengers for gain, to pay $50 for each day as a license fee; and prohibiting it upon any lot or inclosure, any part of which is within 1,500 feet of any of the public parks of the city.

The lot or inclosure of the Ferris Wheel is within a little more than 1,100 feet from Lincoln Park. Whether that ordinance was validly adopted—which the appellee questions —we shall not determine.

At the time of its adoption, the appellee had rightfully— as the decision of this court in the first case requires us now to hold—expended $12,000 upon the work of erecting the wheel upon its own property, where its right to erect it was as perfect as its right to plant potatoes. The effect of the ordinance is to confiscate that expenditure.

Assume the competency of the city to fix the place and terms for an entertainment of the character of the Ferris Wheel before the expenditure begins, yet may the city, after the expenditure of such a large sum toward its erection, then fix terms that are prohibitory?

The total expenditure now—for of the progress of such a gigantic undertaking we may almost take judicial notice— must be very largely more than twelve thousand dollars; and if the city is justified in its action, when but the twelve thousand had been expended, it might have waited until a hundred thousand was invested, and then made it a total loss.

The object seems to be to do by indirection what there is not quite the confidence to attempt to do directly. The statute empowers cities and villages " to license, tax, regulate, suppress and prohibit, hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals and other exhibitions, shows and amusements, and to revoke such license at pleasure." Ch. 24, Art. 5, Cl. 41, R. S. Yet in Village of Des Plaines v. Payer, 123 Ill. 350, the Supreme Court held that the village could not prevent picnics and open air dances.

The record of this case presents this wheel as offering an entertainment as innocent as Arcadian simplicity ever enjoyed.

An ordinary, as the word is used in the statute quoted— if we accept the dictionary definition—is an eating house where there is a fixed price for a meal—what we usually regard as the special feature which distinguishes a hotel kept

on the American plan from one kept on the European plan. Can the city of Chicago by exorbitant license fees compel an abandonment of the American custom, and thereby reduce the value of hotel property in Chicago by an amount which can not be conjectured?

These decisions we make on interlocutory orders can not be reviewed by the Supreme Court. Perhaps that consideration may prevent the application of the general rule—should this case ever reach this court on appeal from a final decree—that the law of a case is settled for that court by the decision on a first appeal.

The case shows that the license fees to principal theaters is three hundred dollars per year, and that the highest license to unenumerated permanent performances is fifty dollars per month. This last sum the appellee offered to pay.

We have, on this record, nothing to do with the question whether the city should accept it; but the injunction to restrain the city from interfering with the operation of the wheel while the appellee pays it to the appellant, or into court, is affirmed.