City of Chicago v. The Gunning System.

## City of Chicago, et al., v. The Gunning System.

### Gen. No. 11,696.

114   377
a214s 628

1. MUNICIPALITY—*how express grants to, cannot be enlarged.* Where a municipality is by virtue of a specific provision of the City and Village Act given a certain power, such power cannot be added to by general language found elsewhere in such Act.

2. POLICE POWER—*purpose of.* The true purpose of the police power is the preservation of the health, morals and the safety of the community.

3. POLICE POWER—*what essential to ordinance enacted pursuant to.* An ordinance based upon the police power of a municipality must appear to have been enacted in order to preserve the health, morals or safety of the community.

4. ORDINANCE—*no presumptions aid.* When a question of municipal power is not clear, the right to pass a particular ordinance must be established by the city.

5. ORDINANCE—*when particular, relating to signs and bill-boards, is invalid.* An ordinance directed against signs and bill-boards erected upon private property, regardless of their stability and location, other than such as are built and placed pursuant to its particular provisions, is void.

6. ORDINANCE—*what essential to interference with enjoyment of private property by.* In order to justify such an interference, two facts must be established: first, that the property, either *per se* or in the manner of using it, is a nuisance; and second, that the interference does not extend beyond what is necessary to correct the evil.

7. ORDINANCE—*what considered in determining validity of.* The purpose of an ordinance must always be considered by the court in determining its validity, and an ordinance requiring those following a lawful business to take out a license which in effect amounts to a prohibition, is invalid.

8. ORDINANCE—*when invalid provision of, renders entire ordinance void.* Where an ordinance is entire, each part having a general influence over the rest, and a particular provision thereof is void, the entire ordinance will be so declared.

9. ORDINANCE—*must be reasonable.* An ordinance must be reasonable, and if it is unreasonable, unjust and oppressive, the courts will hold it invalid and void.

10. ORDINANCE—*must be uniform in operation.* An ordinance which puts the use of private property for legitimate purposes at the mercy and caprice of neighboring owners and also discriminates between the owners of real estate at different parts of the city, is invalid.

11. ORDINANCE—*when, invalid in requiring frontage consents.* An ordinance is unreasonable and void in requiring the consent of neigh-

boring owners and residents before permitting the use of private property for a lawful purpose.

BALL, J., dissenting.

Proceeding to restrain interference with business of painting signs, etc. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed June 9, 1904.

**Statement by the Court.** Appellee filed its bill to have a certain ordinance of the city of Chicago declared invalid, and to enjoin appellants from interfering with its business of sign painting and general advertising upon bill-boards.

It alleges, among other things, that at great expense it has erected and is maintaining over 400 bill-boards on vacant property in said city; that said boards are built in a safe and workmanlike manner, and the signs painted thereon are not injurious to the morals of any person; that in June, 1900, the city passed an ordinance in words and figures following :

" Section 1. All signs or bill-boards other than those painted or erected upon any building, shall be limited in their superficial area to one hundred (100) square feet, and shall be constructed of sheet or galvanized iron or some equally incombustible material, and such signs or bill-boards shall not be located nearer than twenty-five (25) feet back of the front line of the lot whereon the same is to be erected; provided that signs not to exceed twelve (12) square feet each may be made of wood, but such signs shall in all respects comply with the above section.

" Section 2. No such sign or bill-board shall be constructed at a greater height than ten (10) feet above the level of adjoining streets, and the base of the sign or bill-boards shall be in all cases at least three (3) feet above the level of the adjoining streets. In case the grade of adjoining streets has not been established, no sign or bill-board shall be constructed at greater height than ten (10) feet above the surface of the ground.

" Section 3. No such sign or bill-board shall be erected within five (5) feet of any other sign or bill-board, and each such sign or bill-board shall have independent support.

" Section 4. No such sign or bill-board shall be erected upon or along any boulevard or pleasure driveway or in any streets where three-quarters ($\frac{3}{4}$) of the buildings in such

street are devoted to residence purposes only, unless the person or persons desiring to erect such sign or bill-board shall first have secured the consent in writing of three-quarters ($\frac{3}{4}$) of the residents and property owners on both sides of the street in the block where it is desired to erect such sign or bill-board.

" Section 5. All owners of signs or bill-boards erected before the passage of this ordinance, which signs or bill-boards have a superficial area exceeding one hundred (100) square feet, or which are of greater height than ten (10) feet above the surface of the ground (other than such signs or bill-boards as are painted or erected upon buildings), shall pay an annual license on the first day of July of each year at the rate of fifty (50) cents per square foot; and in case of failure to pay such annual license within thirty (30) days of July first of each year, such signs or bill-boards shall be torn down by the fire department under the direction of the commissioner of buildings."

Section 6 prescribes a penalty for any violation of the ordinance. Section 7 provides that the ordinance shall be in force from and after its passage.

The bill further alleges that the city has no power to regulate or license any sign or bill-board or the owner thereof; and that each of the provisions of the ordinance is unreasonable and oppressive; that under a resolution of the city council passed in March, 1896, a license fee of $1 for each twenty-five feet of bill-board frontage was exacted, and that such resolution is void; that complainant has now in the city about 420,000 square feet of such signs and bill-boards, the gross income from which is about $120,000, the average board being 30x12 feet, so that under section 5 of the ordinance it must pay to the city $210,000, the effect of which is to destroy its business.

The bill then sets up another ordinance passed January 28, 1901; but as this ordinance is conceded to be invalid, it need not be further noticed.

The bill further states the arrest by the city, at different times, of the servants of the complainant when they were engaged in repairing existing boards and in building new ones. It declares that the boards now erected, in order that they may not endanger passers-by, must be from time

to time repaired, and that the city prevents this from being done; that unless the defendants be restrained by injunction, the business of complainant will be irretrievably ruined and its property destroyed. Prays that said ordinance and each of the sections thereof be declared null and void, and that the defendants be restrained from tearing down any of such boards, from interfering with the repair of the same, from preventing the erection of new boards, and from further prosecution of the servants of complainant.

The answer of defendants, among other things, denies that said boards are built in a safe and substantial manner, asserts that many of them are unsafe and are dangerous to persons in their vicinity, and that all of them are liable to be blown down by storms, and are a fire menace to neighboring houses; that they are a nuisance to citizens, and many of the advertisements thereon tend to corrupt the morals of the public. That the ordinance of June, 1900, is a valid exercise of the powers of the city, and is not in any respect oppressive.

The cause was referred to a master to take proofs and to report his findings of law and of fact. The master reported that said ordinance was valid and reasonable, except as to sections 4 and 5, which he found to be invalid and unconstitutional. Each party objected to certain of such findings. Upon the hearing the learned chancellor entered a decree to the effect that each of said ordinances is unreasonable and void, and perpetually enjoined the defendants as is in the bill prayed. From such decree the city of Chicago perfected this appeal.

Edwin White Moore, for appellants; Edgar Bronson Tolman, Corporation Counsel, of counsel.

Henry W. Wolseley and E. Allen Frost, for appellee.

Per Curiam.

The decree entered herein must be sustained for the following reasons:

First. The power of the city council to pass such an

ordinance is doubtful.    Since municipal corporations exercise delegated and limited powers only, no presumptions can be indulged in as to the validity of their acts.    When questioned and the power is not clear, the right to pass a particular ordinance must be shown by the city.    Village v. Doherty, 30 Ill. App. 662; Schott v. People, 89 Ill. 197. The only express power in the Cities and Villages Act, relating to signs, is clause 17 of section 1 of article 5, by which the city can regulate and prevent the use of signs on the streets and public places of the city.    Here is a specific provision relating to signs.    The power thus expressly granted cannot be added to by general language found elsewhere in the act.    If it be said that it is doubtful if bill-boards are included in the word " signs " as used in this clause, that doubt compels us to affirm the decree of the learned chancellor in so far as it is based upon this clause. If the power to pass the ordinance of June, 1900, is given anywhere in that act, it is found in clause 66 of section 1, which reads :    " To regulate the police of the city, or village, and pass and enforce all necessary police ordinances." It is admitted that this clause confers power beyond the mere creation and regulation of the police force; it may extend to and embrace a subject-matter of police regulation, under the general police power of the state.    McPherson v. Village of Chebanse, 114 Ill. 49.    The true purpose of the police power is the preservation of the health, the morals, and the safety of the community.    Munn v. The People, 69 Ill. 103.    An ordinance based upon this power must appear to be adapted to that end; it cannot invade the rights of person or of property under the guise of a mere police regulation, when it is not such in fact.    Ritchie v. People, 155 Ill. 110.    When an ordinance based upon the police power is brought to the view of a court, it is the duty of that court to determine whether or not it is promotive of the health, the morals or the safety of the people (Ruhstrat v. The People, 185 Ill. 142); and if it does not appear affirmatively that this is its effect, the court is bound to declare that such ordinance is void because it is an

attempt to exercise a power not granted. T. W. & W. Railway Co. v. Jacksonville, 67 Ill. 40.

It appears that this ordinance is directed against signs and bill-boards erected upon private property. It includes and prohibits all such signs and bill-boards, regardless of their stability and location, other than such as are built and placed in obedience to its provisions. The lot owner has the right to erect upon his premises such buildings and other structures as he may please, providing that in so doing he does not imperil others. That right cannot be interfered with unless such peril be shown. It is not in the power of the city council to declare a safe structure erected within the lines of private property to be a nuisance as a structure, and then to cause its removal; nor under like circumstances can the city, by ordinance or otherwise, prohibit the building of a like structure. Yates v. Milwaukee, 10 Wall. 497; 1 Dillon Mun. Corps. 374; Crawford v. Topeka, 51 Kans. 756. To justify interference with the enjoyment of private property two facts must be established: first, that the property, either *per se* or in the manner of using it, is a nuisance; and, second, that the interference does not extend beyond what is necessary to correct the evil. Tiedeman's Lims., sec. 122g. In short, the power is confined to the enforcement in detail of the maxim *sic utere tuo, ut alienum non læ las.*

Second. Section 5 of the ordinance provides that all owners of signs or bill-boards erected before the passage of this ordinance, which signs or bill-boards have a superficial area exceeding 100 square feet, or which are of greater height than ten feet above the surface of the ground, (other than such signs or bill-boards as are painted or erected upon buildings,) shall pay an annual license of fifty cents per square foot, and in case such license is not paid such signs or bill-boards shall be torn down. This section is not regulative, but is prohibitive. It is shown that appellee has in the city 420,000 square feet in superficial area of bill-boards, standing upon private property, from which it realizes a gross income of $96,000, and a net income of $14,000. The

license required by this section under penalty of their demolition amounts to $210,000 per year, a sum double the gross yearly income. This statement shows that what is intended is not regulation, but is destruction; that the entire ordinance was passed in order to destroy the business of appellee and to wreck its property. Further, this license fee is arbitrarily placed upon signs and bill-boards presumably erected lawfully, in a substantial, safe and workmanlike manner, and with due regard to the safety of the public. The purpose to be accomplished by an ordinance must always be considered by the court in determining its validity. Ligare v. Chicago, 139 Ill. 46; Smith v. McDowell, 148 Ill. 60. If the business be not in itself unlawful, an ordinance requiring those who follow that business to take out a license which in effect amounts to a prohibition, is invalid. Chicago v. Ferris Wheel Co., 60 Ill. App. 384. Where the city has no power to suppress or to prohibit a business in direct terms, it cannot reach the same result indirectly by imposing unreasonable burdens upon those who follow that business. Carrollton v. Bazzette, 159 Ill. 284. Laws which interfere with the personal liberty of the citizen to follow what lawful occupation he pleases, or to erect upon his real estate such safe structures as he may see fit, by compelling him to take out a license to follow the one or to construct the other, are invalid. Chicago v. Banker, 112 Ill. App. 94, and cases therein cited.

This ordinance is entire, each part having a general influence over the rest, and as section 5 is invalid, the entire ordinance is void. 1 Dill. Mun. Corp., sec. 421, 4th ed. This rule is more clearly stated in Cooley on Cons. Lims., pp. 178–9: "If a statute attempts to accomplish two or more objects, and it is void as to one, it may still be in every respect complete and valid as to the other; but if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid portion; and if they are so mutually connected with and dependent on each other as conditions, considerations or

compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them."

Third.   The ordinance is unreasonable.   " An ordinance must be reasonable, and if it is unreasonable, unjust and oppressive, the courts will hold it invalid and void." McFarlane v. Chicago, 185 Ill. 252.   Section 1 of the ordinance declares that no sign or bill-board shall be located nearer than twenty-five feet back of the front line of the lot whereon the same is erected, thus depriving the property owner of the right to use a part of his lot for a legitimate purpose.   This restriction does not tend to provide for the public safety or to promote the public morals; nor does it fall within any of the objects to conserve which the police power is conferred upon municipal corporations.   If the sign or bill-board stood upon the front line of the lot and was unsafe, it might endanger the passer-by, and it may be that the common council has the power to order it to be placed far enough back from the street to obviate that danger.   It is common knowledge that such a structure, when it falls over, extends no further from its base than its height.   The master found, and the trial court approved the finding, that the limitation that a bill-board which is ten feet high shall not be erected nearer the street than twenty-five feet, so far exceeds the distance necessary to protect the public from danger as to be unreasonable; and we agree with that finding.   The same section limits the size of such bill-boards to 100 square feet.   This limits the length of a bill-board to about fourteen feet, notwithstanding it may be placed hundreds of feet away from the street. Such a restriction upon the liberty of the lot owner in the use of his property is unreasonable and oppressive.   The limitation as to the height of such bill-boards to ten feet above the level of the adjoining streets, and that the base of the bill-board shall be at least three feet above the same level,

finds but little support in the evidence, and is, in our opinion, unreasonable.

Section 4 declares that no sign or bill-board shall be erected upon or along any boulevard or pleasure driveway, or in any street where three-quarters of the buildings are devoted to residence purposes only, unless the consent of three-quarters of the residents and property owners on both sides of the street be first obtained. This section puts the use of private property for legitimate purposes at the mercy of the caprice of neighboring owners, and also discriminates between the owners of real estate in different parts of the city. "Ordinances must be of uniform and general operation within the municipal limits; any unnecessary discrimination between persons, classes or places, renders them invalid." Hibbard v. Chicago, 59 Ill. App. 470. The evidence does not show that bill-boards placed near boulevards or pleasure driveways are more dangerous to the public than are those erected near other highways. More people pass along the ordinary street than travel over the boulevards or pleasure drives. An ordinance is unreasonable in requiring the consent of neighboring owners and residents before permitting the use of private property for a lawful purpose. St. Louis v. Russell, 116 Mo. 248. To the same effect are City of Newton v. Belger, 143 Mass. 598; Ex parte Sing Lee, 96 Cal. 354; Yick Wo v. Hopkins, 118 U. S. 356-374, and Barbier v. Connolly, 113 U. S. 27. By the common law the owner of real estate may erect upon this lot line such a fence as he pleases, providing it is built in a safe, substantial and workmanlike manner; and he may permit another to paint thereon any sign which is not immoral nor a disturbance of the public peace in its tendencies. It will not do to say that the fence without the painting is an innocent object, but that the moment the sign is painted upon it it becomes amenable to the law; for that would be legislating against the advertisement and not against the surface upon which it is placed.

Believing that the ordinance in question is beyond the

power granted to the city council, that taken as a whole it is invalid, and that it is unreasonable in many of its provisions, the decree of the Superior Court is affirmed.

*Affirmed.*

MR. JUSTICE BALL.

I dissent from the foregoing opinion for the following reasons:

Clause 66 of section 1 of the Cities and Villages Act gives the city the power to regulate the police and to pass and to enforce all necessary police ordinances. I concede that the exercise of this power must be promotive of the health, the safety or the morals of the people, and that it must be reasonable and not oppressive or partial.

Clause 75 gives to the city the right to declare what shall be nuisances and to abate the same. If the thing legislated against be a nuisance *per se*, or becomes so by reason of its locality, surroundings or its management, the power of the city over it is plenary; but if it may or may not be a nuisance, the power of the city to declare it a nuisance depends upon the fact that it is such. Laugel v. Bushnell, 197 Ill. 26. In doubtful cases much is necessarily left to the discretion of the city, and its acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights, or clearly transcend the powers granted to them. 1 Dill. Mun. Corps., sec. 379.

Clause 78 empowers the city to do all acts and to make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease. It is difficult to define the police power. The status of a great city never becomes fixed, but changes from year to year. Hence a definition of that power which protects the life, health and morals of the citizen today may be totally inadequate in the next decade. It is sufficient to say that this power is based upon and is co-extensive with the maxim *Salus populi suprema est lex*, and is flexible enough to meet all the demands of our changing civilization. No man owns his property absolutely. When the public needs it

the public takes it. That he is compensated for such tak-
ing is a mere incident, not a part of the power. He is
given its ascertained value because that is equitable, and
not because it is his right. Nor can the owner put his
property to any use he may see fit. That use is hedged
about by the maxim *Sic utere tuo, ut alienum non lædas.*
To prevent a harmful use of property the city may pass
any reasonable ordinance under the police power granted
in its charter.

The master fairly states the construction of these bill-
boards as shown by the evidence as follows: "These bill-
boards are constructed very much like an ordinary fence of
close boards, a structure commonly known to all men, but
instead of the usual six-inch cedar fence posts we have here
4x4, 4x6 and 6x6 pine posts; and whereas the common
fence has no bracing, these bill-boards are braced with 2x6
pieces of pine running from the top of the upright post and
firmly fastened to the wooden anchor in the ground. If
we imagine the common fence with its posts carried up to
the height of twelve feet to twenty-four feet, and then
braced as these bill-boards are braced, as aforesaid, we have
a good idea of the structure of these bill-boards."

The bill charges that, "as already alleged, complainant
has about 400 sign boards within the limits of said city,
and that said sign boards will, from time to time, neces-
sarily require repairing and rebracing in order that the
same shall be free from all danger to the citizens of the
city of Chicago and persons passing in proximity thereto;
that however strongly and securely said boards may be
originally constructed, the effect of the elements upon said
boards will from time to time absolutely necessitate repairs
being made to them to keep them in a proper and safe con-
dition."

The evidence shows that complainant has about 773 bill-
boards within the city; about 170 of them are placed upon
the top of other bill-boards; they measure from 10 to 36
feet in height, and are from 10 to 361 feet in length.
Their sheet-like structure makes them peculiarly liable not

only to be blown over, but also to be carried a distance by violent winds. A rotten upright, or a brace which pulls out, or a nail which gives way, may put the entire structure at the mercy of the next wind storm.

It is the duty of the city to keep its streets in a reasonably safe condition, not only within the limits of the highway, but also as to structures adjacent thereto which from their insecurity endanger the safety of the passer-by. Instances in which the exercise of this power in the wrecking of unsafe structures on private property has been sustained are so numerous that the citation of any of them is unnecessary.

Where the power to pass an ordinance concerning a certain subject is clear, the law is well settled that *prima facie* the ordinance as passed is valid; N. Chi. City Ry. Co. v. Lake View, 105 Ill. 207; State v. Dubarry, 46 La. Ann. 33; State v. Inhabitants, etc., 53 N. J. L. 132; and the courts will not interfere except to prevent the unreasonable invasion of private rights. In considering the validity of ordinances the courts will give them a reasonable common sense construction, and will incline to sustain rather than to overthrow them. If by one construction an ordinance will be valid, and by another void, the courts will, if possible, adopt the former. Perry Co. v. Jefferson, 94 Ill. 220; Lasher v. People, 183 Ill. 226. It is true that if an ordinance be entire, each part having a general influence over the rest, and one part be void, the entire ordinance is void. It is also the law that where an ordinance consists of several distinct and independent parts, although one or more of them may be void, the rest are equally valid, as though the void clauses had been omitted. 1 Dill. Mun. Corps., sec. 421, 4th ed.; People v. Olsen, 204 Ill. 497. The first four sections of the ordinance in question relate to bill-boards thereafter to be erected. The fifth section deals with bill-boards then constructed and in place. If this last section were struck out the ordinance would remain a perfect whole. Hence section 5 is a distinct and independent part, not having a general influence over the remainder of

the ordinance. It follows that the other sections may be valid, despite the fact that section 5, as held in the majority opinion (with which in this respect I agree) is oppressive and void.

Section 4 relating to bill-boards upon and along boulevards and pleasure driveways is more in doubt. The time will come, if it is not now here, when the beauty created by the expenditure of millions of the public funds will not be allowed to be disfigured by vast bill-boards portraying the virtues of particular brands of whiskey, or of medicines which work while you sleep, in order that some corporation or firm may have a net annual income of less than four cents per superficial foot of such boards.

The provision in section 1, that such bill-boards shall be constructed of sheet or galvanized iron, or some other equally incombustible material, needs no argument to sustain it. The inflammable character of thin sheets of weather-dried boards is common knowledge. The power of the city to legislate against fire is plenary. The provision limiting the superficial area of each board to 100 square feet is justified by the electrical conducting power of the material of which the new boards are required to be constructed. The city is rapidly being enclosed in a network of live wires which threaten death to every living thing which comes in contact with their currents. It is prudent that the city take all reasonable precautions to interrupt the possible carrying of this deadly current by limiting the length of these boards.

The provision that such bill-boards shall not be located nearer than twenty-five feet back of the front line of the lot is not unreasonable. If the board be blown over, from the nature of its construction, it falls toward the street. If the board be built to the height permitted by the ordinance it may not reach the sidewalk should it hold together. But if parts of it are separated from the rest, the violence of the storm will carry them further. Who shall say that the provision for a leeway of fifteen feet is unreasonable and an unnecessary disturbance of the enjoyment

of individual rights? Certainly, in the absence of evidence to prove its unreasonableness, a court ought not to so decide.

The provision in section 2 that no bill-board shall be constructed of a greater height than ten feet above the level of the adjoining streets is properly based upon the necessarily fragile character of the construction of these boards, when the vast expanse which they present to the wind is considered. It may be that a greater height is still within the limits of safety, but that is a question resting in the discretion of the city council, the exercise of which will not be disturbed by the courts except it plainly appears (as it does not in this case) that the result is oppressive or prohibitive.

The provision that the base of the bill-board shall be at least three feet above the level of the adjoining streets is justified by the evidence. It is not shown that complainant is injured thereby. To put the base of the board next the ground furnishes a place where offensive nuisances may be committed, where refuse and filth may be dumped, and where tramps and thugs may hide; thus endangering the health as well as the peace and safety of the public.

The provision in section 3 that no bill-board shall be erected within five feet of any other board is sustained by the fact that it lessens the dangers arising from crossed or broken electrical wires, and provides a partial relief of wind pressure in storms.

Appellee has erected these bill-boards to the height of thirty-six feet and for the length of an entire block. Believing that such structures threatened the safety of the public, the city council passed the ordinance in question. The regulations therein prescribed must be deemed proper and lawful unless they are shown unnecessarily to deprive the owners of real estate of a fair and safe use of their property. As to the first three sections of the ordinance this record is silent concerning any unreasonableness, while the conclusions to be fairly drawn from the evidence are that these regulations are just and reasonable, and limit the use of private property no further than is required for the public safety.

City of Chicago v. The Gunning System.

The questions arising in this case are somewhat novel, but in Gunning v. Buffalo, 77 N. Y. Sup. 987; Whitmier v. Buffalo, 118 Fed. Rep. 773 (W. D. New York); *In re* Wilshire, 103 Fed. Rep. 620 (S. D. California); Rochester v. West, 164 N. Y. 510, and in Crawford v. Topeka, 51 Kan. 760, they have been discussed.

In the Kansas case, *supra*, it is decided that an ordinance directing that every bill-board shall be placed at least five feet further back from the street line than the height of the board, is unreasonable and in deprivation of property rights. But in the same case it is held that if a bill-board fastened to the sidewalk blows down and injures one in the street, the city is liable, if the board had been in an unsafe condition for a time long enough to charge the city with notice of its condition. This case, while holding that the city can exercise no control over the construction or location of a bill-board, puts upon the municipality the duty of constant supervision to see that the board is kept in repair. A decision which announces such opposing conclusions is not persuasive to the average legal mind.

In Gunning System v. Buffalo, 71 N. Y. Sup. 155, and 77 N. Y. Sup. 987, the ordinance provided that no one should erect a fence or bill-board more than seven feet high, and that any fence or bill-board erected contrary to the ordinance should be abated as a nuisance. Complainant averred that it had erected upon private property a bill-board twelve feet high and fifty feet long, and that the city was about to tear it down. An injunction was obtained and continued in force until the final hearing. The trial resulted in an order dismissing the bill and dissolving the injunction. Upon appeal the decree of the trial court was affirmed. The court say: "In this case the charter of Buffalo expressly authorized it to enact such ordinances as should be deemed expedient for the good government of the city and the promotion of peace and good order. These expressions are quite similar to the welfare and safety of the community. The court very properly held that authority was given the city to adopt the ordinance in question by the provision of the charter."

In Rochester v. West, *supra*, the ordinance prohibited the erection of bill-boards exceeding six feet in height except by permission of the common council after notice to the owners, etc. The defendant was convicted of a misdemeanor for a violation of the ordinance. The charter gave the city the authority "to license and regulate bill posters and bill distributers and sign advertising, and to prescribe the terms and conditions upon which any such license shall be granted," etc. The court say: "Nor do we think that the appellant's claim that this statute (charter) was unauthorized, can be sustained. It is obvious that its purpose was to allow the common council to provide for the welfare and safety of the community in the municipality to which it applied. If the defendant's authority to erect bill-boards was wholly unlimited as to height and dimensions, they might readily become a constant and continuing danger to the lives and persons of those who should pass along the street in proximity to them. * * * Nor was it in conflict with any provisions of the state or federal constitution. * * * When a statute is obviously intended to provide for the safety of a community, and an ordinance under it is reasonable and in compliance with its purpose, both the statute and the ordinance are lawful, and must be sustained."

In *In re* Wilshire, *supra*, on a petition for *habeas corpus*, it was held that a municipal corporation may lawfully, in the exercise of general police powers delegated to it by its charter, regulate the height of bill-boards maintained therein, within reasonable limits; and a city ordinance limiting the height of such structures to six feet from the ground or sidewalk is not so clearly unreasonable as to justify a court in holding it void as in violation of constitutional rights of property, and the petitioner was therefore remanded to the custody of the officer.

In Whitmier v. Buffalo, *supra*, following Rochester v. West, *supra*, it was held that under the Buffalo city charter authorizing the common council to enact ordinances to prevent and abate nuisances and for the good government

of the city, etc., the city had power to pass an ordinance prohibiting the erection of bill-boards exceeding seven feet in height within the city without the council's permission, and authorizing the abatement of any board erected in violation of the ordinance as a nuisance.

Believing that these cases state the law, I am compelled to dissent from the majority opinion in this case.