NANCY E. CLINEBELL, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.*

FILED NOVEMBER 22, 1906. No. 14,484.

1. **Railroads**: LIABILITY. A railroad company is not liable for injuries caused by a team taking fright at the ordinary operation of a train upon its road. *Hendricks v. Fremont, E. & M. V. R. Co.*, 67 Neb. 120, followed and approved.

*Rehearing denied. See opinion, p. 542, *post*.

**2.** Evidence examined, and *held* insufficient to sustain the judgment of the trial court.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*J. W. Deweese* and *F. E. Bishop,* for appellant.

*N. T. Gadd, R. G. Moore* and *J. H. Broady, contra.*

OLDHAM, C.

This is an action for personal injuries, and is here for a second review by this court. At the first hearing a judgment in favor of the plaintiff was reversed because plaintiff's petition failed to allege any negligent act on the part of the defendant which was the proximate cause of the injuries. The opinion is reported in 5 Neb. (Unof.) 603. After the reversal of the judgment an amended petition was filed and issues joined, and on a trial to the court and jury plaintiff again secured a verdict and judgment, from which defendant appeals.

The only alleged error called to our attention in the brief of the appellant, which it will be necessary to consider, is as to the sufficiency of the testimony to support the judgment. There is no serious dispute as to the manner in which plaintiff's injuries were received. It appears that she was driving home with a gentle team in an open top buggy along a highway, which for some distance near the place of the accident runs nearly parallel to defendant's right of way. The general direction of the public highway is east and west, and the defendant's right of way crosses it at the place of the accident, running in a southeasterly direction. West of the crossing there is a cut about 300 feet long and about 7 feet deep. At the crossing the railroad embankment is about 12 feet high, with an approach leveled back about 37 feet, by which the wagon road crosses the track at right angles. Before reaching this approach the road follows a depression or

gully north of the railroad and comes up an incline to the level of the embankment. Just as plaintiff had driven to the top of the incline to turn in on the approach to the crossing, a freight train came out from the mouth of the cut, and probably caused plaintiff's team to shy and frighten plaintiff so that she jumped or fell from the buggy and received the injuries complained of.

Plaintiff's account of the accident is rather incoherent, probably because she was dazed from fright, as appears from the following extract from the record: "Q. State to the jury what happened. A. Well, I was driving along and I was careful. I was careful and looking. I didn't think of the train or nothing coming for I couldn't see. It was my view right towards home to see a train, but I didn't see any. I supposed maybe it had gone down. I didn't know and I drove along there, didn't hear any sound or nothing, and I drove up on the crossing, pretty near to the crossing, and the first thing I knew the horses threw their ears up, pricked their ears up, and that's all I know. I don't know how I got out or nothing. * * * Q. What happened afterwards, if you know? Where did you go? A. Well, when I come to myself the train was done gone, I discovered. I got up the best I can, I don't know how, but I was frightened, when I got up I saw my fingers was cut here and here (indicating), and I hobbled up and I discovered the box was loose from the buggy, and I didn't know what to do, anyway. I don't know how I got around, but I got around some way; and when I went to get the horses around and went to fastening up the tugs I was all this nervous. I didn't see any hurt, but I was bloody here, and I was just so nervous I couldn't fasten the tugs at all, but I got them fastened and I discovered the footsteps to get into the buggy, and I just threw my foot up on them, and I got into the buggy, and the team started off with me. When I got on the track everything was turned blind. I was turned blind. I couldn't see. I squatted right down in the buggy, and the team took me home. That is all I know about that."

She also testified that she did not hear either the bell or the whistle before seeing the train. It was further established that when she got home she was in a dazed, partially unconscious condition, and bore evidence of severe and painful injuries from her fall. Numerous witnesses, at various distances ranging from a quarter to a half a mile from the railroad, testified that they heard neither the bell nor the whistle when the train passed the crossing. The only witnesses, other than the plaintiff, who saw the accident were two brakemen on defendant's train. The brakeman near the front end of the train testified that he saw the horses turn slightly away from the track when the train approached, and saw plaintiff jump from the buggy. The brakeman who was on the caboose testified that, when his car passed the team, plaintiff was standing by the horses and apparently holding them. All the employees in charge of defendant's train testify positively that the whistle was sounded at the whistling post 200 feet west of the crossing, and that the bell was rung continuously while passing through the cut and over the highway.

The only negligent act relied upon by plaintiff as the proximate cause of the injury was the defendant's failure to ring the bell and blow the whistle on approaching the crossing, it being contended that if these signals had been given plaintiff would have heard them and would have remained down in the gully until the train had passed, and would thus have escaped the accident. While the failure to give these signals on approaching a public crossing constitutes statutory negligence, yet, unless such negligence is shown to be the proximate cause of the injuries complained of, proof of this fact alone is not sufficient to show a right of recovery. Even though we were willing to concede that the negative testimony of plaintiff's witnesses, as against the positive declarations of the persons in charge of the train, is sufficient to sustain the finding of the jury that the statutory signals were not given at the crossing, we are still unable to see how,

without entering on the domain of remote speculation, we could conclude that such failure was the proximate cause of plaintiff's injury. The contention that plaintiff would not have driven up onto the approach of the crossing if she had heard the statutory signals is purely conjectural and unsupported by any testimony contained in the record. To our minds, the only logical conclusion that can be deduced from the facts surrounding the accident is that the proximate cause of the injury was the fright either of plaintiff · or her team at the ordinary operation of a passing train. In the recent case of *Hendricks v. Fremont, E. & M. V. R. Co.*, 67 Neb. 120, it was held that "a railroad company is not liable for injuries caused by a team taking fright at the ordinary operation of a train upon its road."

We therefore conclude that the evidence is insufficient to sustain the judgment, and we recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

The following opinion on motion for rehearing was filed April 4, 1907. *Rehearing denied:*

OLDHAM, C.

Counsel for plaintiff below have filed a very clear, concise, and well-directed brief in support of a motion for a rehearing in this case, in which they ask us to set out more specifically our views on the liability of a railroad company for injury occasioned at or near a public crossing, where the failure to comply with the statutory requirements of ringing the bell and blowing the whistle is estab-

lished. In compliance with this request we would say that it is always a violation of the statute to neglect to give these signals at the distances from public crossings therein prescribed, and such failure subjects the railroad company to the penalties prescribed, whether injuries occur from such cause or not. But, where the failure to give these signals is relied on as actionable negligence in seeking to recover for injuries received at or near the crossing, such failure must be shown by competent testimony to have been the proximate cause of the injuries complained of, that is, it must stand in relation to the injuries as cause to effect. Now, in the case at bar, there is no dispute as to how the injury was received. The plaintiff was in her buggy on the public road, about 30 feet from the railroad track, when the freight train came along. She probably became frightened at the train, and jumped from the buggy and was hurt. The team did not run away and cause the injury, but remained standing while the train passed, and until the plaintiff had hitched up the loose tug and replaced the fallen tongue in the neck-yoke, when she drove home. We think there can be no question that the proximate cause of this injury was plaintiff's fright at a moving train operated in an ordinary manner. There can be no doubt, under the testimony, that if she had remained in the buggy no injury would have befallen her. Consequently, her misfortune falls within the large class of regrettable casualties for which no one is legally to blame. We therefore recommend that the rehearing be denied and the former opinion adhered to.

AMES and EPPERSON, CC., concur.

By the Court: Motion overruled.