LUELLA WATSON, APPELLANT, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED MAY 17, 1918. No. 20032.

1. **Appeal:** CONFLICTING EVIDENCE. When the evidence is conflicting on a material point, the verdict of the jury is final when the issue has been fairly submitted by the rulings and the instructions of the court.

2. ———: INSTRUCTIONS: HARMLESS ERROR. When the evidence will not sustain a verdict other than that returned by the jury, errors

that are assigned respecting the giving or refusing of instructions, may be disregarded.

3.  **Railroads: TEAM TAKING FRIGHT: LIABILITY.** A railroad company is not liable for injuries caused by a team taking fright at the ordinary operation of a train upon its road. *Hendricks v. Fremont, E. & M. V. R. Co.*, 67 Neb. 120.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*Bernard McNeny*, for appellant.

*E. E. Whitted, T. M. Stewart, Jr.*, and *J. L. Rice*, contra.

DEAN, J.

Luella Watson, by William W. Watson, her father and next friend, sued the defendant railroad company in the district court for Franklin county to recover for personal injuries sustained from colliding with a freight train on a public highway that crosses the railroad at right angles. The case was tried twice to a jury, and at both trials defendant recovered a verdict, and plaintiff appealed.

The accident occured at about 4 in the afternoon on September 5, 1914. Plaintiff was about 10 years of age, and her brother George, who was 13, was driving the horse as they returned from school in a buggy. The train came from the west and the buggy approached the track from the north, crossing it diagonally toward the southeast at a point 10 or 12 feet east of the plank crossing. When the buggy was about to clear the south track, the engine struck the left hind wheel turning it over and throwing the occupants out.

George was the principal witness produced by plaintiff at both trials. At the second trial his testimony differed on a material point from that formerly given with respect to the events immediately preceding the collision. At the first trial he testified: "Q. Now, you say you stopped? A. Yes, sir. Q. At what point did you stop the horse? A. Just as soon as we got started

on the right of way. Q. At the place where you stopped, state whether or not you had a clear view up the railroad track toward the west? A. Yes; I had a clear view. * * * Q. Tell the jury about how far west you could see at that place along the track. A. About a quarter of a mile." At the second trial he testified on direct examination that from the point where he stopped the horse he could see along the track to the west only about 200 feet and no further on account of growing corn and tall weeds. At another period in the direct examination on the same point he testified that a person "couldn't see any more than 200 feet up the track until you got right on the track."

The defendant called several witnesses to whom George talked after the accident, some of whom were neighboring farmers and the others were trainmen in charge of the train at the time. They testified that George told them in substance that he stopped the horse, which had become frightened and unmanageable, because he saw or heard the train coming, and that in his efforts to hold the frightened animal in check the right line broke. It seems that he then pulled on the remaining line sufficiently to turn the horse toward the southeast, which perhaps accounts for the direction that the horse was going when it plunged over the track in front of the engine about 10 or 12 feet east of the plank crossing.

Plaintiff did not testify at the first trial. At the second trial she testified that just as the buggy passed the corner of the fence, which was about 30 feet north of the track, they stopped, and that she looked and listened, but heard neither bell nor whistle nor the rumble of the train, and did not know of its approach until "just as the horse was stepping on the track." A witness called by plaintiff was moving a steam threshing rig in the highway at the time of the collision and about a quarter of a mile north of the crossing in question. He testified that he saw and that he also heard the rumble of the approaching train when it was

three-quarters of a mile away, but that he did not hear a whistle sounded and was not sure whether the bell was ringing.

On the day of the accident two or more witnesses traced the buggy tracks on the highway from a point about 70 feet north of the railroad track to the place where the buggy crossed to the other side, and they testified that the tracks at the north indicated that the horse seesawed back and forth, and that at a point about 35 feet north of the railroad track, as shown by a plat in evidence, the course of the buggy veered to the southeast and crossed the railroad track diagonally about 12 feet east of the plank crossing. There was testimony that certain of the Watson mail was dropped out of the buggy, and that it was found in or very close to the seesaw tracks made by the buggy.

The engineer and one or more trainmen testified that the whistle was sounded about a quarter of a mile west of the crossing, and that the bell was kept ringing continuously by an automatic device from the time they left Franklin, which is the first station east of the crossing. There is nothing in the record tending to show that the train was operated in any other manner than such as is ordinarily employed in running through open country, and it has been held by this court that in such case a railroad company is not liable for injuries that are caused by a team taking fright at the ordinary operation of a train upon its road. *Hendricks v. Fremont, E. & M. V. R. Co.*, 67 Neb. 120; *Clinebell v. Chicago, B. & Q. R. Co.*, 77 Neb. 538. At the close of the second trial the jury, on request of defendant, was permitted to go and for itself view the scene of the accident.

From the testimony we conclude that the jury were justified in bringing in a verdict for the defendant. That the case was twice tried by a jury in the vicinity of the accident and the same result reached at both trials is significant. Where the evidence is conflicting on a material point, the verdict of the jury, under our

uniform practice, must be regarded as final when the issue has been fairly submitted by the rulings and the instructions of the court.

Plaintiff complained that the court erred in refusing to give certain instructions offered by her, and among them one informing the jury that she and her brother were required to exercise only the degree of care that is ordinarily exercised by children of their age. The assignment does not appear to us to be well founded. The court instructed the jury specifically with respect to the degree of care that must be exercised by children of tender age in a like situation, and, while he did not in specific terms refer to George, nevertheless the instructions were such that an intelligent jury would not have been misled in the premises. Apparently the jury concluded from the testimony that both plaintiff and her brother saw and heard the train in time to have avoided the accident or could have done so if they had exercised such reasonable care as the law imposes upon persons of like age.

Finding no reversible error the judgment is

AFFIRMED.

ROSE and HAMER, JJ., not sitting.