(April 27, 1909.)

R. K. WHEELER, Respondent, v. THE OREGON RAILROAD & NAVIGATION COMPANY, a Corporation, Appellant.

[102 Pac. 347.]

MOTION FOR NONSUIT — RAILROAD CROSSING—NEGLIGENCE—RINGING BELL AND BLOWING WHISTLE—CONTRIBUTORY NEGLIGENCE.

1. Revised Codes, sec. 4354, prescribes the grounds upon which a judgment of nonsuit may be entered.

2. This statute does not authorize a motion for a nonsuit until all of the evidence of the plaintiff has been put in or offered and the plaintiff rests his case.

3. The mere fact that counsel for plaintiff fails to state facts, in his opening statement to the jury, which would entitle plaintiff to recover is not a ground for granting a nonsuit before evidence is offered to support the plaintiff's claim.

4. The question of negligence may be a question of law and fact, or purely a question of law.

5. If the facts are disputed and from them reasonable and prudent men might disagree as to negligence, then the question of negligence becomes a question of fact, and under proper instructions must be submitted to the jury.

6. If, however, the facts are undisputed and but one deduction can be drawn therefrom, then the question of negligence is purely one of law.

7. Rev. Codes, sec. 2821, requires a railroad company operating trains to place a bell or whistle upon its locomotives, and to ring such bell or blow such whistle upon approaching a railroad crossing over a street or highway; and makes the company liable for damages sustained by any person and caused by its locomotives, trains, or cars, when the provision of this section is not complied with.

8. This section does not limit the liability of a railroad company to damages for injuries which result from the failure to ring the bell or blow the whistle, but declares absolutely that where the bell is not rung or the whistle blown and damages are sustained, the company is liable.

9. This section makes the failure of the railroad company to comply with its provisions negligence *per se,* negligence in law, and under this statute the plaintiff makes his case by showing the negligence or noncompliance with the law and the injury; but this statute does not deny the right to the defendant to show that the plaintiff is not entitled to recover because of contributory negligence on the part of the plaintiff which was the proximate cause or one of the proximate causes of the injury.

10. As a general proposition of law, a person approaching a railroad crossing, whether a street crossing in a city or a crossing over a public highway in a country district, is required to stop, look and listen for an approaching train; and if he omits to do so and walks thoughtlessly upon the track, or if by looking and listening he could have seen the train coming, and, instead of waiting for it to pass, undertakes to cross the track, and in either case receives an injury, he so far contributes to it as to deprive him of any right to complain.

11. There are, however, exceptions to this rule, one of which is where the circumstances are such that it would avail nothing in preventing the injury if the injured party does look and listen, as it is only when it appears that he might see if he look, or might hear if he listen, that his failure to look and listen will necessarily constitute negligence.

12. In determining the care required to be exercised, reasonable allowance should always be made for the circumstances surrounding the case; and if a person is suddenly put into peril without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions or making an unwise choice under this disturbing influence, although if his mind had been clear, he ought to have done otherwise.

13. The rule that it is contributory negligence for a person to go upon a railway track without looking or listening to ascertain whether there is danger from an approaching train depends upon the circumstances and conditions; and the question whether a per-

son failing to look and listen is exercising the care which a reasonable and prudent person would exercise under such circumstances is a question for the jury.

14. The question, then, whether Mrs. Grant was guilty of contributory negligence in stepping upon the railroad track of the appellant in an effort to escape an apparent danger from a fractious team, without looking and listening for a note of warning of the approach of the appellant's train, depends wholly upon the question whether in view of all of the circumstances as they appeared to Mrs. Grant, as a reasonable and prudent person, at that time she acted in a prudent and reasonable manner and exercised reasonable care in the course she took, which is a question of fact for the jury to determine.

15. In such case the question depends, first, upon whether the defendant was negligent; second, if negligent, whether the plaintiff at the time of the accident was guilty of contributory negligence.

16. Where a witness, who is not a party to a suit for damages, makes a statement soon after the injury that "the accident was her fault," such evidence is hearsay and opinion evidence and not a statement of facts against interest or part of the *res gestae,* and should be stricken out on motion.

(Syllabus by the court.)

APPEAL from the District Court of the First Judicial District, in and for Shoshone County. Hon. W. W. Woods, Judge.

An action to recover damages for the killing of plaintiff's minor child. Judgment for plaintiff. Defendant appeals. *Affirmed.*

Carlton Fox, A. H. Featherstone, and Ralph E. Moody, for Appellant.

The duty of a traveler in approaching and attempting to cross a railroad crossing is to stop, look and listen. And if his duty is omitted the traveler is guilty of negligence *per se,* and the court is bound to instruct the jury as a matter of law that a verdict be returned in favor of the defendant company. (Elliott on Railroads, 2d ed., secs. 1164-1166; *International & G. N. R. Co. v. Edwards,* 100 Tex. 22, 93 S. W. 106; *Holmes v. South Pac. Ry. Co.,* 97 Cal. 161, 31 Pac. 834; *Woolf v. Wash. R. & Nav. Co.,* 37 Wash. 491, 79

Pac. 997; *Smith, Admr., v. Norfolk & Western Ry.*, 107 Va. 725, 60 S. E. 56; *Dryden v. Penn. R. Co.*, 211 Pa. 620, 61 Atl. 249; *Rumpel v. Oregon S. L. Ry. Co.*, 4 Ida. 13, 35 Pac. 700, 22 L. R. A. 725; *Pilmer v. Boise Traction Co.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Hooks v. Huntsville Ry. Light & Power Co.*, 147 Ala. 700, 41 So. 273; *Wabash R. R. Co. v. Keister*, 163 Ind. 609, 67 N. E. 521; *International & G. N. R. R. Co. v. Edwards supra*, and other cases cited above.)

A *prima facie* case of negligence against a railroad company for injuries to a traveler at a crossing is not established by proof of failure to give the statutory signals, but the evidence must show that such failure was the proximate cause of the injury. (*Louisville & N. R. Co. v. Christian etc. Brewing Co.*, 150 Ala. 390, 43 So. 723; *Rogers v. Rio Grande Western Ry. Co.*, 32 Utah, 367, 125 Am. St. 876, 90 Pac. 1075; *Clinebell v. Chicago B. & Q. Ry. Co.*, 77 Neb. 538, 110 N. W. 347.)

Sudden peril which will excuse what otherwise would be contributory negligence of the plaintiff must have been caused by the action of defendant and not a third person. (*Trowbridge, Admr., v. Danville Street-car Co.* (Va.), 19 S. E. 780.)

If one voluntarily goes into a place of danger without exercising the care required by law, he is guilty of negligence, although after so getting into the place of danger he exercises his best judgment to the best of his ability to escape from the danger. (Elliott on Railroads, 2d ed., sec. 1173; *Davis v. Chicago R. I. & P. Ry. Co.*, 159 Fed. 10; *New York Trans. Co. v. O'Donnell*, 159 Fed. 659, 86 C. C. A. 527; *Dummer v. Milwaukee Elec. Ry. & Light Co.*, 108 Wis. 589, 84 N. W. 853; *Chattanooga Elec. Ry. Co. v. Cooper*, 109 Tenn. 308, 70 S. W. 72; *Briscoe v. Southern Ry. Co.*, 103 Ga. 224, 28 S. E. 638.)

A person in a vehicle driven by another is in duty bound to stop, look and listen. (*Brickell v. New York Cent. R. Co.*, 120 N. Y. 290, 17 Am. St. 648; 24 N. E. 449; *Fechley v. Springfield Traction Co.*, 119 Mo. App. 358, 96 S. W. 421;

*Illinois Cent. R. Co. v. McLeod*, 78 Miss. 334, 84 Am. St. 630, 29 So. 76, 52 L. R. A. 954; *Miller v. Louisville etc. R. Co.*, 128 Ind. 97, 25 Am. St. 416, 27 N. E. 339; *Smith v. Maine Central R. Co.*, 87 Me. 339, 32 Atl. 967; *Thompson v. Pennsylvania R. Co.*, 215 Pa. 113, 64 Atl. 323; *Missouri R. Co. v. Bussey*, 66 Kan. 735, 71 Pac. 261; *Galveston R. Co. v. Kutac*, 72 Tex. 643, 11 S. W. 127; *Louisville & N. R. Co. v. Molloy*, 28 Ky. Law, 1113, 91 S. W. 685; *Cable v. Spokane & Inland E. R. Co.*, 50 Wash. 619, 97 Pac. 744; *Davis v. Chicago R. I. & P. Ry. Co.*, 159 Fed. 10.)

The last chance doctrine does not apply unless the defendant have actual knowledge of the dangerous position of the plaintiff; nor does it apply where plaintiff has been negligent and such negligence continues concurrently with the negligence of the defendant directly contributing to produce the injury. (*Sauer v. Eagle Brewing Co.*, 3 Cal. App. 127, 84 Pac. 425; *Drown v. Northern O. Traction Co.*, 76 Ohio St. 234, 118 Am. St. 844, 81 N. E. 326; *Int. & G. N. R. Co. v. Ploeger* (Tex. Civ. App.), 96 S. W. 56; *Cardwell v. Gulf B. & G. N. Ry. Co.*, 40 Tex. Civ. App. 67, 88 S. W. 422.)

The testimony of Mrs. McCain was admissible as an admission against interest and also as a part of the *res gestae*. (Elliott on Evidence, sec. 2510; *Entwhistle v. Feighner*, 60 Mo. 214; *Louisville v. Molloy, Admx.*, 28 Ky. Law, 1113, 91 S. W. 685; *Westall v. Osborne*, 115 Fed. 282, 53 C. C. A. 74; *Rothrock v. City of Cedar Rapids*, 128 Ia. 252, 103 N. W. 475; *Lambert v. LaConner T. & T. Co.*, 30 Wash. 346, 70 Pac. 960; *Ohio & M. Ry. Co. v. Stein*, 133 Ind. 254, 32 N. E. 831, 19 L. R. A. 733; *Travelers' Ins. Co. v. Mosley*, 75 U. S. (8 Wall.) 397, 19 L. ed. 437; *Texas & P. R. Co. v. Hall*, 83 Tex. 675, 19 S. W. 121.)

Gray & Knight, for Respondent.

The testimony of the witnesses for the plaintiff showing the negligence of the defendant was not disputed by any testimony offered. The servants of the defendant company gave no signal or warning of the approach of the train to

the crossing. No bell was rung or whistle sounded; no lookout was being kept ahead; no brakeman or other servant of the defendant was upon the front end of the string of cars which was being pushed ahead of the engine; no person was stationed at the crossing to give warning of the approach of trains; the air-brakes upon the cars were not connected with the engine and the brake upon the first car was entirely out of condition and useless. This constitutes negligence. (Sec. 2821, Rev. Codes; Elliott on Railroads, sec. 1158; *Steele v. Northern Pac. Ry Co.,* 21 Wash. 287, 57 Pac. 820; *Rumpel v. Oregon S. L. Ry. Co.,* 4 Ida. 13, 35 Pac. 700, 22 L. R. A. 725.)

The question of whether or not the persons on the engine were keeping a proper lookout is properly one for the jury. (*Baltimore & P. Ry. Co. v. Cumberland,* 176 U. S. 232, 20 Sup. Ct. 380, 44 L. ed. 447; *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485.)

The instructions which the court gave upon the question of contributory negligence in this case were approved by the supreme court of the United States in *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485.

"A plaintiff put in a place of sudden peril by the negligent act of a defendant, who, losing self-possession, takes the wrong step and is injured, will not have such step imputed to him as contributory negligence." (*Chattanooga Elec. Ry. Co. v. Cooper,* 109 Tenn. 308, 70 S. W. 72; Shearman & Redfield on Negligence, 5th ed., sec. 89; *Alabama etc. Ry. Co. v. Lowe,* 73 Miss. 203, 19 So. 96; *Sealey v. Southern Ry. Co.,* 151 Fed. 736, 81 C. C. A. 282; *Steele v. Northern Pac. Ry. Co.,* 21 Wash. 287, 57 Pac. 820; *Nebraska Tel. Co. v. Jones,* 60 Neb. 396, 83 N. W. 197; *Williams v. Chicago etc. Ry. Co.,* 78 Neb. 695, 111 N. W. 596, 14 L. R. A., N. S., 1224; *Schwanenfeldt v. Chicago etc. Ry. Co.,* 80 Neb. 790, 115 N. W. 285.) Counsel for appellant take the position that the perilous or dangerous situation of the plaintiff must have been caused by the negligent act of the defendant; otherwise the plaintiff cannot recover. Such is not the law. (*Grand Trunk R. Co. v. Ives, supra;* Shear-

man & Redfield on Negligence, 5th ed., sec. 89; *Chattanooga El. Ry. Co. v. Cooper, supra; Alabama etc. Ry. Co. v. Lowe, supra; Lorenz v. Burlington etc. Co., supra; Nebraska Tel. Co. v. Jones,* 60 Neb. 396, 83 N. W. 197; *St. Louis S. W. Ry. Co. v. Shelton* (Tex. Civ. App.), 115 S. W. 877.)

The testimony of Mrs. McCain was not a part of the *res gestae,* was made after Mrs. Grant had been removed to the depot, and was purely narrative. (*Vicksburg etc. Co. v. O'Brien,* 119 U. S. 99, 7 Sup. Ct. 118, 30 L. ed. 299; *Citizens' Ry. Co. v. Howard,* 102 Tenn. 474, 52 S. W. 866; *Springfield Ry. Co. v. Puntenney,* 200 Ill. 9, 65 N. E. 442; *Leahey v. Cass Ave. & F. G. Ry. Co.,* 97 Mo. 165, 10 Am. St. 300, 10 S. W. 58; *Richmond & D. R. Co. v. Hammond,* 93 Ala. 181, 9 So. 577; *Williams v. Southern Pac. Co.,* 133 Cal. 550, 65 Pac. 1100; *Citizens' St. Ry. Co. v. Stoddard,* 10 Ind. App. 278, 37 N. E. 723; *Williamson v. Cambridge R. Co.,* 144 Mass. 148, 10 N. E. 790; *Scott v. St. Louis K. & N. W. R. Co.,* 112 Iowa, 54, 83 N. W. 818; *Twomey v. Swift,* 163 Mass. 273, 39 N. E. 1018; *Springfield v. Coe,* 166 Ill. 22, 46 N. E. 709.)

STEWART, J.—This action is brought by R. K. Wheeler, plaintiff, against the Oregon Railroad & Navigation Co., a corporation, defendant, to recover damages for the alleged negligent killing by the defendant of the plaintiff's minor child. The complaint in substance alleges: That Margaret Wheeler, the daughter of plaintiff, met her death on the 17th day of June, 1907, as a result of injuries inflicted by the defendant railroad company at a railroad crossing in Harrison, Kootenai county, Idaho; that said child was less than four years of age at the time of its death; that said child, in company with its grandmother, Maggie Grant, was driven to a point near a crossing passing over the tracks of the defendant by one E. W. Wheeler, and that the grandmother and child alighted from the conveyance in which they were driven to such point, and immediately after alighting, and before they had approached the track or attempted to cross the same, the horses attached to said conveyance became frightened and commenced to back, and

in order to escape an injury from the conveyance and horses'
backing onto said child and its grandmother they stepped
upon the railroad track of the defendant at the crossing,
at which time the railroad company carelessly and neg-
ligently caused several cars to be backed along and over said
track at said crossing at a high rate of speed, which struck
said child and from the injuries so received the child died;
that at the time of such accident said train was moving at a
dangerous rate of speed, and that no bell was rung or whistle
blown and no signal of any kind given of the approach of
said train; and that no one was placed upon the front cars
as a lookout or to guard danger or to give signals of warn-
ing; and that no one was stationed at said crossing as a
lookout or to give signals; that the employees were on or
near the engine of said train, and that the view of the track
and crossing from the train was obstructed from the engine
by cars; that the front car was in a bad state of repair,
having no brake-wheel and was not equipped with air-brakes,
and that the air-brakes upon the cars were not connected
with the engine or in working order. It is alleged that had
the servants of the railroad company, who were in charge
of said train, been on the lookout or stationed where they
could have observed persons approaching or passing over
said crossing, and had due care been exercised, the said
minor child of the plaintiff could have been seen for a
distance of one hundred feet and warning given so that
said child might have escaped from said track; and that had
due care been exercised, the train could have been stopped
in ample time before striking said child; that as a result of
such negligence and carelessness the plaintiff was injured
in the sum of $1,995.

An answer was filed to this complaint denying the material
allegations of the same, and alleging affirmatively that the
injury to said minor child, which caused her death, was
received by reason of the negligence, carelessness and omis-
sion of duty of the grandmother in charge and custody of
such child at the time of such accident; that such accident
was the result of the contributory negligence of the grand-

mother, who had charge and control of such child at the time of the accident, and without fault on the part of the company. The cause was tried to a jury and a verdict rendered for the plaintiff in the amount prayed for. A motion for new trial was made and denied, and this appeal is from the judgment and from the order overruling the motion for a new trial.

The questions presented by the record may be grouped into two propositions: First: Was the defendant guilty of negligence? Second: Was the grandmother, who had charge and control of said child, guilty of contributory negligence which was the proximate cause of the injury?

There is no substantial conflict in the evidence and the facts are substantially as follows: The railroad track of the defendant company approaches the city of Harrison from the west and passes in a semi-circular course from the west to north and then to east, and curves the north boundary of the city of Harrison, passing between the city and Lake Coeur d'Alene. The railroad track approaches the depot at Harrison from the west and is comparatively straight for a distance of perhaps 500 feet before reaching the depot, and passes between the depot on the south or east side of the track and the freight depot on the north or west side of the track. Between the depot and the freight office there is a crossing passing from the east or south side of the track upon which the city of Harrison is situated to the north or west side of the track or the lake side, where there is a wharf for boat landing. This crossing is used by the general public as a passageway for footmen and for teams going to and from the wharf.

Maggie Grant, the grandmother of the child injured, was intending to take a boat at the wharf above described, and left her house in Harrison accompanied by the child for the boat landing. Believing that the boat left earlier than it in fact did, and being in a hurry to reach the same, soon after leaving her house she entered a conveyance driven by one E. W. Wheeler, who conveyed her and the child to the crossing above described near the north or east end of the

depot.    The team was driven to this crossing and stopped
for Mrs. Grant and the child to alight.    Mr. Wheeler assisted
Mrs. Grant and the child to alight and was removing a hand
satchel from the conveyance when a loud noise occurred from
steam exhausting from an engine on the defendant's track
west or south of the depot.    The noise from this exhaust
frightened the team and they at once began to rear and
back, and Mrs. Grant took hold of the child and with the
child stepped upon the track of the defendant.    At this
instant an engine with four or five cars in front of it backed
from the west or south and upon Mrs. Grant and the child,
resulting in injuries to the child from which it died upon
the same day.

In describing the circumstances surrounding the accident,
E. W. Wheeler testifies as follows:

"Saw Mrs. Grant upon the street, she was hurrying down
to the dock to take the boat up the river with her grand-
child, . . . . Margaret Wheeler.    Mrs. Grant said she was
afraid she was going to miss the boat, she thought it was
later than it was; she wanted to know if I would take her
to the dock; I did; took her and the child in the rig and
drove down and stopped opposite the railroad crossing that
goes to the dock; stopped probably eight feet from the rail-
road track, standing parallel with the railroad; cramped
the team and the buggy away from the track; got out,
handed the child out and put her on the ground and then
helped Mrs. Grant out, then reached and took her traveling
bag and turned to give it to her; at that time came a violent
exhaust from the engine; the engine was then down the
track 125 yards from me, and when the exhaust came the
horses, one of them plunged ahead and one almost dropped
to the ground; that was the off one, or the one next to the
railroad track, just jumped right back and squatted down;
the other horse plunged forward, that turned the team
toward the railroad track and they surged back and that
crowded us close to the railroad track.    My entire attention
was drawn to the team and controlling them, keeping them
off of us; the train was approaching rapidly; a man sprang

forward and grabbed the team by the head and he says, 'I will attend to the team. Get that woman and child out of there.' Well, the accident had occurred, and the train stopped when I turned and Mrs. Grant was under the train. The child was under or partly under the train, one of her feet was held by the wheels of the second trucks, possibly it would be the third set of trucks; the length of a car had already passed over her.

"Did not see the engine when coming down the hill; there was no engine or moving cars in the yard; did not hear or see anything until the exhaust came; did not know there was a train approaching, and when I heard this exhaust knew there was a moving train; the flat car that struck the child was perhaps seventy paces away. At the time I first glanced up and the only time I noticed the train, the first and only time I looked at it, it was moving rapidly. The exhaust frightened the team and I had my hands full from that time on. . . . . I cramped the buggy and threw it back toward the railroad track in a position so that the buggy would be between Mrs. Grant and escape from the railroad to the road up the hill. The horses were American-bred horses, belonged to me, a family team; a team that my wife and daughter was in the habit of driving, well broke and gentle, accustomed to being around railways and gentle to drive around the railroad."

On cross-examination this witness testified, among other things:

"Mrs. Grant and the baby were out of the rig, between the rig and the track; Mrs. Grant stood very much in the position that I did with her back to the train and away from the approaching train. If she had turned around or faced the approaching train she could have seen it for a short distance; for the same distance that I could see it, which was perhaps 125 yards. Could have driven the team down there and turned around in the open space; could have driven the team up and turned around and let Mrs. Grant and the child out at the end of the depot; had been standing there for perhaps three seconds before I heard

the exhaust. . . . . The first thing I did when I got out of the wagon was to take the child out; placed the child on the ground and then helped Mrs. Grant out, then I took the grip from the rig and set it on the ground. Then I was pretty busy handling my horses; the exhaust came just as I was going to hand the grip to Mrs. Grant and I dropped it. The exhaust was very loud, they were opening up the engine full force, as I should judge, and being against this bank it made it extra loud. . . . . I did not say anything to Mrs. Grant about the train coming and she did not say anything to me. Did not turn around to see what Mrs. Grant did after I tried to hand her the grip; the team and rig was upon us; the rig was backing up on us and I had my hands full with them. Did not know where Mrs. Grant went; know she went under the train, did not see her step back. The end of the train nearest me was probably 100 feet when I heard the exhaust.''

J. Wesley Alkron corroborates the evidence of E. W. Wheeler in the main and also testifies:

''There are 500 to 1,000 people that daily pass to the steamers, crossing over the railroad track. This is the main thoroughfare between the steamboat landing, for travel, the only passageway. People pass from the steamboat landing to the passenger depot by way of the cross-walk, crossing the O. R. & N. where it passes the end of the freight depot to the east; that would be after the crossing of the main line it would reach the east side of the O. R. & N. tracks. . . . . Mr. Wheeler drove down to the cross-walk there, which is a distance of about sixty feet from the passenger depot. He drove up alongside the main line and turned his team slightly from the track, alighted from the vehicle, held the lines in his right hand and with his left hand assisted Mrs. Grant and the little girl to alight. About that time the engine and a few cars were in the rear end of the yard, or in the direction of the St. Joe mill—at the easterly end. They gave a sudden start or loud exhaust, the exhaust frightened the team, or at any rate the team took fright and commenced plunging, rearing and backing

up. Mrs. Grant stepped back from the vehicle and from where I was standing it looked to me as if she was standing by the side of the track, and about that time the switch or freight train, whichever it may be, came tearing down the line towards her and kept approaching until I saw it strike Mrs. Grant and she tilted forward or pitched backward, she being taller than the flat car. . . . . The car that struck Mrs. Grant was a flat car and the next one was a coal-car, a steel car; there were three or four cars in the train. The engine was facing the way it was going, pushing these cars up ahead of it; there was not any whistle blown or any bell rung. The crossway or walk-way has been used ever since I have been in the state of Idaho.''

He first noticed the car that struck Mrs. Grant when it was about thirty or forty feet from her; that he had heard it before; that he had heard the exhaust; did not make any more noise than the ordinary rumbling of an approaching train; there wasn't anyone on the flat car nor anyone on the coal-car—did not see any brakeman at all.

A. A. Crane corroborates the evidence of E. W. Wheeler in the main and testified:

''Saw Mrs. Grant, Mr. Wheeler and the child drive down together. They drove the team down and got out of the wagon, all of them got out and Mr. Wheeler stopped the team near the depot, stopped at the north end of the depot, about twenty or thirty feet from the depot and turned up near the platform. . . . . The buggy was a few feet from the track, six or eight feet or such a matter. After Mrs. Grant and the child got out of the buggy they were between the track and the buggy. At the time the horses were jumping and rearing up and lunging back and forth. The man had turned the team and was on the ground trying to control them. When the horses commenced to jump Mrs. Grant took the little girl by the hand and commenced to back away from the wagon, backwards from the wagon. She was backing towards the track and pulling the little girl with one hand after her. Saw the train strike her. The train was just approaching the south end of the depot when

I saw it. . . . . The engine bell did not ring, nor the whistle blow. No one on the train prior to the time it struck Mrs. Grant gave any notice or warning that the train was approaching. There was no switchman or flagman at the crossing, could not state the speed of the approaching train; traveled about three times as fast as a man could walk. Did not see any effort made to stop the train prior to the time it struck Mrs. Grant; after it struck Mrs. Grant the train went about the length of a car. . . . . There is no other road from Harrison to the depot, other than the road that Mr. Wheeler drove down; it is traveled by everyone that has to go in that direction.''

Willard Smith, a witness for the plaintiff, testified among other things:

''Saw the train approaching, it was backing up, saw the cars were coming this way ahead of the engine, towards Wallace; there was a flat car on the first end of it, the second a flat car with low sides to it, and about five box-cars, then came the engine. There was no one on the flat car or on the next car; saw the brakeman on the third car; it was a box-car; I observed him a very short time before the train stopped.''

The witness further testified: ''There is a walk from the steamboat landing up to the railroad—plank walk. Been in use since I was there; used by all the people who come across from the steamboat landing; used to approach the depot, the passenger depot of the defendant company. There is another way you can get across, you can go angling-ways across that railroad although there is no walk there.''

On cross-examination this witness among other things testified:

''At the time I saw the brakeman he was facing toward these flat cars, motioning with his hands, what I should judge was a back signal at first; all at once he changed the signal and gave a stop signal with his hands and after he gave the stop signal. I remember the train stopped quite suddenly with quite a jar; looked down and saw the child, appeared to be under the car on the other side of the track,

couldn't distinctly see; noticed the child before the car stopped; noticed the wheels, the child seemed to be on the ground, the wheels passed by it while I was looking at it.''

George Ramsey, a witness for the plaintiff, among other things testified:

''Examined the car to find whether it was equipped with a brake and don't think there was any air-brake equipment on it, and no way in which air-brakes might be worked. There was a brake beam and there is a handle coming up but laid over so far a man could not get hold of it. . . . . Did not hear the whistle blow nor the bell ring at all; saw the car stop and heard them say there was a woman under the cars.''

This, in brief, is the evidence on the part of the plaintiff.

At the conclusion of the plaintiff's testimony the defendant made a motion for nonsuit upon the ground: First, that the evidence was insufficient; second, failure of proof as to negligence on the part of the defendant; third, failure of proof to show negligence; fourth, that the evidence shows that the injury was caused by the fault and want of care of Maggie Grant, the grandmother of the child, and in whose custody the child was at the time of the accident; and want of care of the grandmother which contributed directly to the accident and was the proximate cause of said injury; fifth, contributory negligence on the part of the plaintiff. This motion was overruled by the court to which defendant excepted. The defendant introduced no evidence except a witness connected with the claim department of the defendant, who produced certain photographs taken showing the location of the place of the accident, the crossing over the track, the passenger and freight depot and the immediate surroundings where the accident occurred; and upon this evidence the cause was submitted to the jury.

At the conclusion of the opening statement made by counsel for plaintiff, and before any evidence was offered by either party, counsel for defendant made a motion for a nonsuit, which was denied by the trial court, and this is assigned as error. The court committed no error in over-

ruling this motion. We are not aware of any statute which authorizes the granting of a motion for a nonsuit upon the mere failure of counsel to state a case upon which plaintiff should recover in his opening statement to the jury. Section 4354 of the Rev. Codes of this state prescribes the grounds upon which a judgment of nonsuit may be entered, and no provision is made therein for the making of a motion for nonsuit before evidence is offered to prove the plaintiff's case.

Subdivision 5 of this section provides that a judgment of nonsuit may be entered "By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove a sufficient case for the jury." Under this statute this court held in the case of *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20: "That motion cannot be entertained by the court until all of the evidence of the plaintiff has been put in or offered and the plaintiff rests his case." (*Kroetch v. Morgan,* 10 Ida. 172, 77 Pac. 19.)

The mere fact that in the opening statement counsel for plaintiff fails to state facts sufficient to entitle plaintiff to recover is not a ground for motion for nonsuit. The plaintiff's claim is stated and made by the complaint, and to sustain such claim proof is required to be offered, and if upon offering such proof the plaintiff's case has not been made, then a motion for a nonsuit may be presented and disposed of by the court. The mere failure, however, of counsel in his opening statement to state a cause of action with the same degree of certainty as required in the pleadings is not a reason why the plaintiff should not be allowed to submit his proof. Under the statute of this state the opening statement may be waived and a party may offer proof to support the complaint without having made a statement of the case. We find, therefore, that the court committed no error in overruling this motion.

It is next contended that the court erred in overruling a motion for a nonsuit made at the close of plaintiff's evidence. As shown above, the only evidence offered by the defendant was for the purpose of identifying photographs

showing a view of the premises where and in the vicinity of which the accident occurred. The ruling of the court upon this motion presents the important and controlling question in the case. To clearly understand the contention made by appellant the consideration of this question may be divided into two propositions:

First: Was the defendant company guilty of such negligence, independent of the conduct of Mrs. Grant, as will render it liable for the death of plaintiff's child? Second: Was the grandmother, the custodian of the child injured, guilty of contributory negligence which was the proximate cause of the injury?

A consideration of these two propositions requires an examination of the evidence as well as certain instructions given by the court and other instructions requested by defendant and not given. There is certainly no conflict in the evidence upon the main questions involved. From the evidence it appears that the accident occurred at a crossing used by the general public in passing from the depot of the defendant and the city across the track of the defendant to a boat landing where passengers take passage upon boats plying upon Lake Coeur d'Alene and rivers tributary thereto. This crossing is used both by footmen and by teams, and on an average to the extent of from 500 to 1,000 people daily. This crossing has been used for a number of years with the full knowledge of the defendant of the use made of the same and the extent of the use.

At the time the accident occurred there were no gates placed at the crossing and no lookout stationed there to warn persons passing over the same of the approach of trains or to signal trains of any danger at the crossing. The train which caused the accident consisted of an engine pushing in front of it at least four cars, consisting of two box-cars and two flat-cars.

It appears that a brakeman or lookout was upon the second box-car from the engine and at the time of the accident was signaling the engineer to push forward the train; and about the time the accident occurred signaled the engineer

to stop the train. The whistle was not blown nor the bell rung or any indication given from the train of its approach to the crossing. It further appears that the air-brakes on the car first reaching the crossing were not connected with the engine; and that the brake upon such car was not in a condition for use. Whether the air-brakes on the other cars were connected with the engine does not appear.

Counsel for respondent argue that the facts thus disclosed by the evidence not only constitute negligence, but gross negligence, upon the part of the railroad company in operating such train; while counsel for appellant argues that the railroad company was not guilty of negligence and exercised such due care as would be required of an ordinary person under the same circumstances.

It is generally conceded, by the authorities, that the question of negligence may be one of law or law and fact. If from the evidence different minds of prudent and reasonable men might come to different conclusions, as to whether there was negligence, then the question is one of fact to be submitted to the jury under proper instructions; but if only one conclusion is deducible from the facts, then the question becomes purely a question of law. (*Adams v. Bunker Hill & S. Min. Co.*, 12 Ida. 637, 89 Pac. 624; *McKissick v. Oregon Short L. Ry. Co.*, 13 Ida. 195, 89 Pac. 629, 29 Cyc. 629; *Kansas Pac. Ry. Co. v. Pointer*, 14 Kan. 37; *Fernandes v. Sacramento City Ry. Co.*, 52 Cal. 45; *Herbert v. Southern Pac. Co.*, 121 Cal. 227, 53 Pac. 651; *Grand Trunk Ry. Co. v. Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485.) If, then, from the facts detailed by the evidence in this case reasonable and prudent men might disagree as to whether the company was negligent, then the question of negligence becomes one of fact, and under proper instructions should be submitted to the jury. (Above authorities.)

There are many cases independent of the statute hereafter referred to which in effect hold that the facts as detailed by the evidence in this case show negligence upon the part of the company as a matter of law. (*Rumpel v. Oregon S. L. Ry. Co.*, 4 Ida. 13, 35 Pac. 700, 22 L. R. A. 725;

*Steele v. Northern Pac. Ry. Co.*, 21 Wash. 287, 57 Pac. 820; 2 Shearman & Redfield on Negligence, sec. 471; *Cheney v. New York, C. & H. R. R. Co.*, 16 Hun. 415; *Kansas Pac. Ry. Co. v. Pointer*, 14 Kan. 37; *Cooper v. Lake Shore & M. S. Ry. Co.*, 66 Mich. 261, 11 Am. St. 482, 33 N. W. 306.)

This question, however, is not open to controversy in this case, for section 2821 of the Rev. Codes of this state makes a railroad company liable for all damages sustained by any person and caused by its locomotive, trains or cars when the provisions of the section are not complied with. Rev. Codes, section 2821:

"A bell of at least twenty pounds weight must be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad crosses any street, road or highway, and be kept ringing until it has crossed such street, road, or highway; or a steam whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same, under a penalty of one hundred dollars for every neglect, to be paid by the corporation operating the railroad, which may be recovered in an action prosecuted by the prosecuting attorney of the proper county, for the use of the state. The corporation is also liable for all damages sustained by any person, and caused by its locomotives, trains, or cars, when the provisions of this section are not complied with."

It will be seen from this section that the failure to ring a bell or blow a whistle, when approaching a street crossing or roadway, makes the company liable for damages sustained by any person and caused by a locomotive, train or cars. This statute does not rest the liability for damages upon the contingency that the injury sustained was the result of the failure to ring the bell or blow the whistle, but declares absolutely that where the bell is not rung or the whistle blown and damages are sustained, the company is liable. This section, no doubt, was enacted for the purpose of requiring a railroad company operating a train over a track, crossing a street or public highway, to give a signal of warn-

ing of the approach of such train, and to thereby notify persons intending to pass over the same of the approach of such train. It prescribes a penalty for a failure to comply with its provisions, and makes the company liable for all damages sustained. While this section provides that a railway is liable for all damages sustained by any person caused by a locomotive, train or cars, when a bell is not sounded or a whistle blown, still it does not abrogate the doctrine of contributory negligence or operate to give a right of action where the negligence of the plaintiff contributed to, and was the proximate cause of the injury. (*Rumpel v. Oregon S. L. Ry. Co.*, 4 Ida. 13; 35 Pac. 700, 22 L. R. A. 725; *Meeks v. Southern Pac. R. R. Co.*, 52 Cal. 602; *Trousclair v. Pacific Coast Steamship Co.*, 80 Cal. 521, 22 Pac. 258; *Hager v. Southern Pac. Co.*, 98 Cal. 309, 33 Pac. 119; *Pepper v. Southern Pac. Co.*, 105 Cal. 389, 38 Pac. 974; *Green v. Southern Cal. Ry. Co.*, 138 Cal. 1, 70 Pac. 926; *Houston & T. C. R. Co. v. Wilson*, 60 Tex. 142; *Tex. & Pac. R. Co. v. Anderson*, 2 Tex. App. Civ. Cas., sec. 203; *Pittsburg, C. & St. L. Ry. Co. v. Knutson*, 69 Ill. 103; *Toledo, W. & W. Ry. Co. v. O'Connor*, 77 Ill. 391; *Karle v. Kansas City & St. Joe & C. B. R. Co.*, 55 Mo. 476; *Railway Co. v. Wilson*, 90 Tenn. 271, 25 Am. St. 693, 16 S. W. 613, 13 L. R. A. 364; *Weber v. Kansas City C. Ry. Co.*, 100 Mo. 194, 18 Am. St. 541, 12 S. W. 804, 13 S. W. 587, 7 L. R. A. 819.)

The meaning and effect of a statute similar to that now under consideration was discussed by the supreme court of Texas in the case of *Houston & T. C. Ry. Co. v. Wilson, supra*, in which the court said:

"Our statute requires that those operating trains shall, in approaching a public crossing, ring the bell or sound the whistle for a distance of eighty rods from the crossing, and enforces this command with a penalty of fifty dollars; besides makes the company liable for all damages occasioned by the omission. A failure, therefore, to ring the bell or sound the whistle as required is, as a matter of law, negligence. But it should be remarked that a liability does

not attach to every act of negligence *per se;* such liability only attaches when the injury results from the negligence.''

The supreme court of Missouri in the case of *Karle v. Kansas City & St. Joe & C. B. R. Co.,* 55 Mo. 476, says:

"The three instructions which declared a failure of the defendant to observe the regulations of the city ordinance in relation to the speed of trains, keeping headlights and ringing the bell, to be negligence *per se,* were undoubtedly correct. These were violations of an express law and of course amounted to negligence. It does not follow, however, nor was the jury so instructed, that these violations of law, or any one of them made defendant liable; for in this, as in the other instructions, the qualification announced in the first and principal instruction on negligence, that this negligence caused the injury, was necessarily implied; and so the first instruction, if regarded as stating the whole law of this case, manifestly implies that the cause of the injury was the negligence of the defendant and not the negligence of the deceased.''

It is true, however, that the authorities on this question are not uniform, but we believe that the better reason is with the proposition that the failure of the railroad company to comply with the statute is negligence *per se,* negligence in law. Under this statute the plaintiff makes his case by showing the negligence or noncompliance with the law, and the injury; but this statute does not, however, deny the right to the defendant to show that the plaintiff is not entitled to recover because of contributory negligence on the part of the plaintiff which was the proximate cause or one of the proximate causes of the injury. This rule recognizes the right of a defendant charged with negligence to defend upon the ground of nonliability by reason of contributory negligence on the part of the plaintiff. (*Hopkins v. Utah Northern Ry. Co.,* 2 Ida. 300, 13 Pac. 343; *Adams v. Bunker Hill & S. Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844; *Crawford v. Bonners Ferry Lumber Co.,* 12 Ida. 678, 87 Pac. 998.)

It then must be conceded in this case that the defendant was guilty of negligence by failing to comply with the law of this state in ringing a bell or blowing a whistle at the time of approaching the crossing where the accident occurred, and is liable in this case for the injury, unless it appears that the injury received by the plaintiff's child was the result of contributory negligence upon the part of Mrs. Grant, the custodian of such child, which contributory negligence was the proximate cause, or one of the proximate causes, of the injury, and not merely a condition. (*Pilmer v. Boise Traction Co., Ltd.,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254; *Smithwick v. Hall etc. Co.,* 59 Conn. 261, 21 Am. St. 104, 21 Atl. 924, 12 L. R. A. 279.)

This leads to a consideration of the acts and conduct of Maggie Grant, the grandmother of the injured child. It is contended by appellant, and we think must be conceded under the facts of this case, that if Mrs. Grant was guilty of contributory negligence, such conduct will be imputed to the plaintiff. Counsel for appellant argue that Mrs. Grant was guilty of contributory negligence in driving to a point so near the track to alight from the vehicle; and in going upon the track with the child immediately before the injury; in not stopping, looking and listening for the train. Counsel for respondent argue that whether a person is guilty of contributory negligence is to be determined in each case upon the facts of that particular case, and in view of the circumstances attending Mrs. Grant's acts she was not guilty of contributory negligence.

We think it may be stated as a general proposition of law that a person approaching a railroad crossing, whether a street crossing in a city or a crossing over a public highway in a country district, is required to stop, look and listen for an approaching train; and that the failure to do so is negligence *per se.* (3 Elliott on Railroads, sec. 1166; *Holmes v. South Pac. Coast Ry. Co.,* 97 Cal. 161, 31 Pac. 834.)

The true rule, we believe, was stated by the supreme court of the United States in the case of *Chicago etc. R. Co. v. Houston,* 95 U. S. 697, 24 L. ed. 542, as follows:

"He is bound to use his senses—to listen and to look—
before attempting to cross the railroad track, in order to
avoid any possible accident from an approaching train. If
he omit to use them, and walk thoughtlessly upon the track,
he is guilty of culpable negligence; and if he receive any
injury, he so far contributes to it as to deprive him of any
right to complain. If, using them, he sees the train coming
and undertakes to cross the track instead of waiting for
the train to pass, and is injured, the consequences of his
mistake and temerity cannot be cast upon the railroad com-
pany. If one chooses in such a position to take risks, he
must bear the possible consequences of failure."

It will be observed from this rule that if a person omits
to use his senses, that is, to listen and look, and walks
thoughtlessly upon the track, he cannot recover for injuries
received. "Walks thoughtlessly upon the track" means to
take such step without due attention and care. This, how-
ever, would not preclude a recovery, even though one did
not look and listen, if the step was taken upon the track
under excitement and as the only apparent means of escape
from an apparent danger, and without time for deliber-
ation or to realize the danger into which such person would
pass by taking such step. This question will be considered
more at length hereafter, and we call attention to the lan-
guage of the rule announced by the supreme court of the
United States in the above case, for the purpose of em-
phasizing the rule hereafter to be announced by this court.

There are, however, exceptions to this rule, one of which
is where the circumstances were such that it would have
availed nothing in preventing the injury if the injured
party had looked and listened. (Wood on Railroads, sec.
1523, 1525; *Martin v. Little Rock & Fort S. Ry. Co.,* 62
Ark. 156, 34 S. W. 545; *Tiffin v. St. Louis, I. M. & S.
Ry. Co.,* 78 Ark. 55, 93 S. W. 564; *Lorenz v. Burlington
Ry. Co.,* 115 Ia. 377, 88 N. W. 835, 56 L. R. A. 752.)
In the case of *Martin v. L. R. & Fort S. Ry. Co., supra,* the
rule is stated as follows:

"It is only where it appears from the evidence that he might have seen had he looked, or might have heard had he listened, that his failure to look and listen will necessarily constitute negligence."

It may be admitted in this case that it was the duty of Mrs. Grant, on approaching the crossing where the accident occurred, to stop, look and listen for the purpose of discovering whether or not it would be dangerous to cross over such crossing. Mrs. Grant did not testify in this case, but Mr. Wheeler, who drove Mrs. Grant to such crossing, did testify with reference to this matter as follows:

"There was no engine or moving cars in the yard; did not hear or see anything until the exhaust came; did not know there was a train approaching, and when I heard this exhaust knew there was a moving train; the flat-car that struck the child was perhaps seventy paces away. At the time I first glanced up and the only time I noticed the train, the first and only time I looked at it, it was moving rapidly. The exhaust frightened the team and I had my hands full from that time on."

From this evidence we think it clearly appears that at the time Mrs. Grant was approaching the crossing she would not have discovered the danger, even if she had stopped, looked and listened, because there was nothing to indicate the approach of such train, or that it would be dangerous to go to the crossing. It was a place used by the public generally, and in approaching the crossing she had a right to asssume that the railroad company would comply with the law and ring the bell and blow the whistle upon an approaching train. If the train was not approaching and there was nothing to indicate to her the approach of the train, it was not negligence on her part to go to the place where she alighted from the vehicle. After she reached the point, it appears from the evidence that the steam exhaust was opened upon the engine and a loud noise thereby made which frightened the team of horses. This team the evidence shows was a gentle team, accustomed to trains and not subject to fright. When the team became frightened it began to rear

and back, and it was at this time that Mrs. Grant stepped upon the track of the appellant company, taking with her the injured child. It appears she made this move in order to escape from an apparent danger which existed by reason of the action of the fractious team. Acting upon appearances and to escape what seemed to her danger, the law did not impose upon her the duty to stop, look and listen before she made this move. If at the time it appeared to her as a reasonable person that she was in apparent peril and danger, and it was necessary to step back in order to escape such danger, and she thereby stepped upon the track of the appellant corporation into another danger, which resulted in the death of the child, she would not be guilty of contributory negligence and was not placed in a position where the selection she made, made her acts negligence *per se,* because of the failure to stop, look and listen.

It is a well-recognized rule of law that when a person is placed in a position of apparent peril or danger without time to consider the circumstances, and in an effort to avoid such danger steps in the way of another danger or peril, the fact that the person does not make the most judicious choice does not render such person guilty of contributory negligence.

It is stated in Shearman & Redfield on Negligence, 4th ed., sec. 89, as follows:

"In judging of the care exercised by the plaintiff, reasonable allowance is always made for the circumstances of the case; and if the plaintiff is suddenly put into peril, without having sufficient time to consider all the circumstances, he is excusable for omitting some precautions or making an unwise choice, under this disturbing influence, although, if his mind had been clear, he ought to have done otherwise, especially if his peril is caused by the defendant's fault."

In line with this authority counsel for respondent argue that at the time Mrs. Grant stepped upon the track, and immediately before the injury occurred, she was attempting to escape from the danger of the fractious team; and that she had no time for consideration of all the circumstances,

no time to determine how best to escape from the apparent
danger from the team; and the fact that she made an unwise
choice in stepping upon the track of the company, in order to
escape the danger of the team, would not make her guilty
of contributory negligence, although she placed herself in
a position where she received an injury from the moving
train. Counsel for appellant argue that this rule applies
only to cases where the company or defendant places the
deceased or injured party in the position of danger, but
that a different rule applies when the danger is brought
about by some agency independent of the company. The
authorities are not uniform upon this question, and the
views of the various courts are reviewed in Judge Elliott's
work on Railroads, vol. 3, sec. 1173, as follows:

"The rule, however, in some jurisdictions, goes further
than to exonerate the traveler where the peril is caused by
the act of the railroad company, for, if without fault him-
self, the traveler is placed in a position of sudden peril by
a third person or by some accident, as, for instance, by
horses running away, he may be absolved from exercising
that degree of care required of one under ordinary circum-
stances. Some of the courts carry the rule very far, for
it is held that where the attention · of the traveler is dis-
tracted by a commotion in the street or highway, he will
be excused, but while there may be cases in which this
doctrine should prevail, it is one to be cautiously applied
and carefully limited. If there is time for deliberation it
will generally be negligence, on the part of the traveler, to
omit reasonable precautions, and so it will be if his attention
is diverted where there is no element of danger and there
is nothing more than curiosity to know what the commotion
means. Where the sudden peril is attributable to the negli-
gence of the plaintiff, he cannot successfully assert that he
is absolved from the duty to exercise due care. If the plain-
tiff voluntarily goes into a place of danger without ex-
ercising the care required by law, he is guilty of negligence
although after so getting into the place of danger he exer-
cises his judgment to the best of his ability, to escape from

the danger. Care is required to keep out of danger as well as to avoid it after getting into it, and the rule that sudden peril excuses does not govern where the plaintiff without exercising due care goes into a place of danger, such as a railroad crossing is, and of which danger the track itself is a warning. Where there is evidence that there was a sudden peril, that is, a peril not incident to railroad crossings, the question whether the plaintiff was guilty of contributory negligence is generally one of fact, but where there is no evidence of sudden peril, then the question is often one of law." (*Chattanooga Elec. Ry. Co. v. Cooper,* 109 Tenn. 308, 70 S. W. 72; *Alabama & V. Ry. Co. v. Lowe,* 73 Miss. 203, 19 So. 96; *Sealey v. Southern Ry. Co.,* 151 Fed. 736, 81 C. C. A. 282; *Lorenz v. Burlington Ry. Co.,* 115 Ia. 377, 88 N. W. 835, 56 L. R. A. 752; *Nebraska Tel. Co. v. Jones,* 60 Neb. 396, 83 N. W. 197.)

In the case of *Chattanooga Electric Ry. Co. v. Cooper, supra,* the court announces the following rule:

"Where plaintiff's decedent was killed by the negligence of the motorman of a street-car, while he was attempting to escape from an approaching automobile, he was not disbarred from claiming immunity from contributory negligence on the ground that he was placed in a sudden peril, and, losing his self-possession, made a mistake of judgment, by reason of the fact that the peril producing the confusion of judgment and the consequent false effort to escape was not the negligent act of defendant."

In the case of *Adams v. Bunker Hill & S. Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844, in discussing the question of negligence and the presumption arising from one's acts, the court says:

"In other words, the law should and will presume that a sane man will exercise reasonable care and precaution in the preservation of his life, and that he will not knowingly expose or subject himself to those injuries and risks that he might reasonably expect would inflict mortal injuries. In 16 Cyclopedia, 1057, the author, in discussing 'presumptions,' under the subject of *Evidence,* says: 'The instinct

of self-preservation, and the disposition of men to avoid personal harm, re-enforce an inference that a person killed or injured was in the exercise of ordinary care.' "

From the many authorities we have examined upon this question we believe the true rule, as applied to the plaintiff's right to recover in this case, should be: First, whether the defendant was negligent; second, if negligent, whether the plaintiff at the time of the accident was guilty of contributory negligence, in attempting to escape from an apparent peril or danger, thereby placing herself in another danger which resulted in an injury, and whether she acted as a reasonable and prudent person would act under the circumstances; and that this rule should prevail whether the apparent peril or danger was produced by the defendant company or an agency independent of the company. What may be deemed ordinary care in one case, under different surroundings and circumstances might be gross negligence; and the question in its last analysis becomes one purely of fact to be submitted to the jury under proper instructions. From the various authorities we think this question should be decided solely from the standpoint whether the plaintiff's acts, which it is alleged contributed to the injury, were in fact negligence; that is, whether or not the plaintiff at the time of the accident, in attempting to escape from an apparent peril or danger, and thereby placing herself in a place of danger which resulted in injury, acted as a reasonable and prudent person would act under such circumstances, and that this is true whether the apparent peril or danger was produced by the company or an agency independent of the company.

In this case, whether Mrs. Grant was in danger from the fractious team at the time she stepped upon the track of the appellant company, and whether in doing so was guilty of negligence, are questions upon which different minds might reach different conclusions. Counsel in this case seem to disagree upon this question, and this court is forced also to disagree with counsel for appellant. One person might think it was not necessary for Mrs. Grant to attempt to

escape from the team, and that in escaping she might have
pursued a course which would not have taken her upon the
track of the appellant company; while another person might
conclude that inasmuch as there was no warning given from
an approaching train, no bell tolling or whistle sounding,
so as to attract the attention of Mrs. Grant to the fact that
a train was approaching, that she did the very thing that
a reasonable and prudent person would have done under
the same circumstances, and was not guilty of negligence
in so doing; while another person might have concluded that
it was not negligence on the part of Mrs. Grant to step upon
the railroad track if she were under extreme excitement and
fear of danger from the fractious team, and did not have
time to contemplate the result of her acts, even though the
bell was rung and the whistle blown and warning given
from the approaching train. So in the end the question is
resolved to an inquiry whether Mrs. Grant was guilty of
contributory negligence; and to determine this question re-
quires an examination of the surrounding circumstances
attending her conduct and acts which resulted in the injury.

If but one deduction could be drawn from the facts as to
the course an ordinarily prudent person would pursue, then
the question of negligence becomes purely a question of law;
but if different minds might reach different conclusions, then
the question was for the jury. To us the facts are such
that different minds might disagree as to whether Mrs. Grant
acted in a prudent and reasonable manner, and exercised
reasonable care in attempting to escape what might have
seemed to her an apparent peril from the team by step-
ping upon the railroad track of the appellant company,
especially in view of the fact that the railroad company
was negligent at that identical time in not ringing the bell
or blowing the whistle, or giving any warning which might
have attracted her attention and caused her to exercise her
judgment in the direction of remaining in the position she
was before stepping upon the track, rather than stepping
upon the track. Had the company performed the duty it
owed to the public at a crossing and which was required

by the statute, it might have prevented the injury. Such duty might have directed Mrs. Grant's attention to the approach of the train and caused her to choose differently between two apparent dangers. We conclude this part of the opinion by approving the rule announced by the supreme court of Iowa in *Lorenz v. Burlington Ry. Co., supra.*

"The qualification of the rule which justifies the taking into account of the surrounding circumstances in determining whether there was negligence in failing to look and listen is well established. . . . . And this qualification has been recognized by this court. . . . . The question whether, then, in view of the purpose with which deceased went upon the track, and the circumstances under which he did so, he was exercising the reasonable care which an ordinarily prudent man would exercise under the circumstances, was for the jury. We do not mean in any way to question the rule, well established, that where a traveler on a highway approaches a railway track for the purpose of crossing it, it is his duty to look and listen for approaching trains, and if it appears without conflict in the evidence that he failed, without reason, to do so, and that had he done so he would have discovered the danger, he is not entitled, as a matter of law, to recover for injury received from being struck by a train. But this is a different case, and the right of plaintiff to recover was properly left for the determination of the jury on the evidence."

We think, therefore, the court committed no error in overruling the motion for a nonsuit. This also disposes of the alleged error in refusing to give Instruction No. 1 asked by appellant, "You are instructed to return a verdict for the defendant."

Counsel next urge as error the refusal of the court to give Instruction No. 3, with reference to the duty of Mrs. Grant to stop, look and listen before she attempted to cross the track of the defendant. This instruction was in substance covered by Instruction No. 4, given at the request of the defendant. It is next urged that the court erred in

refusing to give Instruction No. 5, requested by counsel for appellant.

This instruction reads as follows:

"If you find from the evidence that as soon as the employees of the defendant saw Maggie Grant and the child who was in her custody step on the track, the said employees immediately attempted to stop said train after they saw Maggie Grant and the child step on said track, then I charge you that the defendant did all that the law required of them, and your verdict should be for the defendant."

It would seem no argument is necessary to show that this instruction is not the law. We presume if the jury found the employees did not see Mrs. Grant at all, that the company would not be liable, however negligent the company might be. This instruction wholly ignores the question of negligence, and simply places the company's liability upon the basis that the company acted as soon as it saw Mrs. Grant and child approach the track. This is not the law.

It is also urged as error the failure of the court to give Instruction No. 7. This instruction was erroneous because it does not take into consideration the acts or negligence of the plaintiff, or the question as to whether or not Mrs. Grant acted as an ordinarily prudent person would have acted at the time of the accident. It is next urged that the court erred in modifying Instruction No. 4, requested by counsel for appellant. This instruction, before modification, was as follows:

"You are instructed that if Maggie Grant, before getting in such a position with reference to the crossing that a collision was imminent, could have seen or heard the approaching train by the exercise of ordinary care and such use of her eyes and ears as an ordinarily prudent person of her age, experience and intelligence would ordinarily make under the then existing circumstances, then it was the duty of Maggie Grant to stop, and if she failed to do so and as a result thereof the child of the plaintiff, which was then in her custody, sustained the injuries from which it died, the plaintiff cannot recover, regardless of the question of whether

the defendant was negligent in any or all of the respects complained of.''

The modification complained of consisted of adding the following:

''Ordinarily every person about to go over a railway crossing is bound to stop, look and listen so as to avoid the peril of encountering a moving train.''

This is correct as an abstract proposition of law, and whatever exceptions exist to such rule might have been covered by a separate instruction if counsel for appellant desired such exceptions to be stated to the jury.

Counsel also complain of Instructions Nos. 4, 5, and 6, given upon request of counsel for plaintiff, the contention being that such instructions authorize the jury to absolve Mrs. Grant from the exercise of that degree of care required of one in ordinary circumstances if she was placed in a position of sudden peril, eliminating therefrom the fact that such sudden peril must have been produced without her fault; and that the defendant's negligence was a cause of such sudden peril.

We have discussed this question in the opinion and such discussion answers the objection made to this instruction. Whether the peril was produced by an agency independent of the company would not preclude the plaintiff's right to recover if, under all the circumstances, Mrs. Grant exercised that degree of care required of an ordinarily prudent person under all the circumstances.

It is next urged that the court erred in giving Instructions Nos. 9 and 10 at the request of plaintiff. We find no error in thus instructing the jury. These two instructions stated the law correctly and were as favorable to appellant as it could expect. It is next urged that the court committed error in striking out the evidence of witness, Mrs. F. D. McCain. Mrs. McCain was called as a witness for the defendant and upon direct examination testified:

''Immediately after this accident heard Mrs. Grant say that the cause of her accident was her own fault and that no one was to blame but herself.''

Upon cross-examination it appeared that Mrs. Grant was carried into the house of Mrs. McCain after the injury, when this statement was made. The plaintiff moved that this testimony be stricken out as hearsay and not part of the *res gestae,* and the motion was sustained. This statement of Mrs. Grant certainly could not be against interest, for she had no interest in the result of the trial. The plaintiff in the case was the father of the child injured. Mrs. Grant had no interest in the result so far as the record in this case appears. Her declarations were merely hearsay and could not bind the plaintiff. (*Norfolk & W. R. Co. v. Groseclose's Admr.,* 88 Va. 267, 29 Am. St. 718, 13 S. E. 454; Elliott on Evidence, sec. 443.)

Neither was this evidence admissible as part of the *res gestae.* This statement made by Mrs. Grant was not a statement of the facts surrounding the accident, but was a conclusion or opinion, she saying that the accident was her own fault and on one else was to blame. That was an opinion, not a statement of the facts. She may have been in error as to who was at fault. As said by the court in the case of *Lane v. Bryant,* 9 Gray, 245, 69 Am. Dec. 282:

"The declaration of the defendant's servant was incompetent, and should have been rejected. It was made after the accident occurred and the injury to the plaintiff's carriage had been done. It did not accompany the principal act, on which the whole case turned, or tend in any way to elucidate it. It was only the expression of an opinion about a past occurrence, and not part of the *res gestae.* It is no more competent because made immediately after the accident than if made a week or month afterward." (*Anderson v. Great N. Ry. Co.,* 15 Ida. 513, 99 Pac. 91; *Richstain v. Wash. Mills Co.,* 157 Mass. 538, 32 N. E. 908; *Beasley v. San Jose Fruit Packing Co.,* 92 Cal. 388, 28 Pac. 485; *Lissak v. Crocker Est. Co.,* 119 Cal. 442, 51 Pac. 688; *Williams v. Southern Pac. Co.,* 133 Cal. 550, 65 Pac. 1100; *Williamson v. Cambridge R. Co.,* 144 Mass. 148, 10 N. E. 790; *Scott v. St. Louis, K. & N. W. R. Co.,* 112 Ia. 54, 83 N. W. 818; *Twomey v. Swift,* 163 Mass. 273, 39 N. E. 1018; *City of Springfield v.*

*Coe,* 166 Ill. 22, 46 N. E. 709; *Glascock v. Central Pac. R. R. Co.,* 73 Cal. 137, 14 Pac. 518.)

We find no error in this record and the judgment is *affirmed.* Costs awarded to respondent.

Sullivan, C. J., and Ailshie, J., concur.

(June 8, 1909.)

ON PETITION FOR REHEARING.

AILSHIE, J.—A petition for rehearing has been filed in this case, and we are asked to again consider the provisions of sec. 2821 of the Rev. Codes. It is contended by the petitioner that the construction we have placed on the provisions of that section is too harsh and not warranted by the language of the statute itself, and that it is also contrary to the decision of the courts construing similar statutes. We have held, and are of that opinion still, that a failure to ring a bell or blow a whistle at a crossing as required by the statute is in itself negligence. This fact alone would not entitle a plaintiff to recover, unless he can also show that the injury was inflicted by the defendant's locomotive or train of cars. The fact that a bell was not rung or a whistle blown would not make the company liable for an injury that it did not inflict. When, however, it is shown that the injury was inflicted by the defendant's locomotive or train of cars at a place where it is required to blow its whistle or ring its bell, and it is shown that the company failed and neglected to comply with the law in this regard, the plaintiff has made a *prima facie* case that he is entitled to have submitted to the jury. If, on the other hand, the injured party has been guilty of contributory negligence, either in failing to look and listen or in recklessly and carelessly subjecting himself to the danger from which he received his injuries, that is a proper matter of defense, and the burden of proof rests with the defendant.

The Alabama statute, considered and construed in *Louisville & N. R. Co. v. Christian Moerlein Brewing Co.,* 150

Ala. 390, 43 So. 723, differs from our statute in its terms and requirements. The court there holds that a failure to ring the bell or blow the whistle at a crossing is *prima facie* evidence of negligence, but that it is not sufficient to justify a recovery without also showing "the proximate cause of the injury." It is not altogether clear, however, just what the court meant by saying that it was necessary for the proof to show "that the negligence mentioned proximately contributed to the cause of the injury." In that case it was conceded that the defendant's locomotive killed the animals.

In *Clinebell v. Chicago B. & Q. R. Co.,* 77 Neb. 542, 111 N. W. 577, it conclusively appeared that the defendant's train did not injure the plaintiff in any way, but that she jumped from a buggy and sustained the injury. That case is not in point here.

*Rogers v. Rio Grande Western Ry. Co.,* 32 Utah, 367, 125 Am. St. 876, 90 Pac. 1075, seems to sustain petitioner's contention that the mere failure to ring the bell or blow the whistle is not sufficient evidence of negligence to entitle the plaintiff to have his case submitted to the jury. An analysis of the case, however, will disclose that the supreme court of Utah held in that case in substance as we have held, that the statute in no way impairs the railway company's defense of contributory negligence. In that case it was said:

"It may be conceded that the failure to comply with the statute with regard to warning signals generally constitutes negligence *per se,* as was held by this court in *Smith v. Mine & S. S. Co.,* 32 Utah, 21, 88 Pac. 683, but proof of negligence without more, however, is not enough. In addition to this the party upon whom rests the burden of proof must show by some competent evidence that the negligence proved was the proximate cause of the injury complained of, or, where there is more than one cause, that it at least was one of the causes."

The latter sentence is somewhat obscure. Whether the court would consider actual injury or killing by the locomotive or train to come within the category of "one of the

causes,'' we are not advised. We think, however, that when the injury is established as having been inflicted by the defendant, and negligence in not blowing the whistle or ringing the bell is shown, a *prima facie* case is made which would entitle the plaintiff to a recovery.

Petitioner also complains of our holding to the effect that a person confronted with a sudden and imminent danger may be excused from looking or listening and the exercise of the usual and ordinary precautions, if to have done so would have been futile or would have endangered the party from the other impending peril. Among the authorities cited, petitioner has called our attention to *Davis v. Chicago, R. I. & P. Ry. Co.*, 159 Fed. 10, and *New York Transp. Co. v. O'Donnell*, 159 Fed. 659, 86 C. C. A. 527. We do not understand these cases as materially differing from the view we have announced. The question of the negligence of the injured party in going upon the track or to the place injured is one of fact to be submitted to the jury. In this case, Mrs. Grant, at the time of the accident, was not primarily traveling toward the defendant's railway track. She was not apprised of any peril or danger on the track, nor was she apprised of the presence of the defendant's locomotive and train of cars. On alighting from the conveyance she instantly found herself confronted by a sudden and imminent danger from the frightened team. Her only retreat from that danger was backward toward defendant's railway track. To have required her to look and listen for an approaching train would have at the same moment deprived her of her right and the apparent urgent necessity of both watching the peril from the team, and retreating therefrom. In the meanwhile she was not apprised of the other danger and peril. Had she been so apprised, she might have concluded that the danger and peril from the moving train was more imminent and impending than that from the frightened team, and might have accordingly held her ground and remained off the track and saved her ward.

We see no reason for granting a rehearing in this case. The petition is denied.

Sullivan, C. J., and Stewart, J., concur.